UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| CHARLOTTE CHARLES and TIM DUNN, | ) | |
| Individually and as Co-Administrators of the | ) | |
| ESTATE OF HARRY DUNN, and | ) | |
| NIALL DUNN, Individually, | ) | |
| | ) | Case No. 1:20-cv-01052 |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| ANNE SACOOLAS and JONATHAN | ) | |
| SACOOLAS, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

COME NOW Defendants, Anne Sacoolas and Jonathan Sacoolas, by counsel, and in and for their Memorandum in Support of Motion to Dismiss pursuant to Rules 12(b)(3) and 12(b)(6) state as follows:

### I.    INTRODUCTION

This eleven count Complaint seeks to recover damages arising from the tragic death of Harry Dunn.[1] Mr. Dunn passed away due to injuries sustained in a motor vehicle accident near Croughton, Northamptonshire, England on August 27, 2019. Defendants move to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(3) under the common law doctrine of *forum non conveniens*.

---

[1] The Complaint contains eleven Counts: (1) Negligence on behalf of the Estate against Anne Sacoolas, (2) Negligence on behalf of the Estate against Jonathan Sacoolas, (3) Breach of Duty on behalf of Estate against Anne Sacoolas, (4) Negligent Entrustment on behalf of Estate against Jonathan Sacoolas, (5) Wrongful Death on behalf of Estate and Beneficiaries against Anne Sacoolas, (6) Wrongful Death on behalf of Estate and Beneficiaries against Jonathan Sacoolas (7) Wrongful Death under Fatal Accidents Act 1976 on behalf of Beneficiaries against Anne Sacoolas, (8) Wrongful Death under Fatal Accidents Act 1976 on behalf of Beneficiaries against Jonathan Sacoolas, (9) Intentional Infliction of Emotional Distress by Beneficiaries against Anne Sacoolas, (10) Negligence on behalf of Tim Dunn against Anne Sacoolas, (11) Negligence on behalf of Tim Dunn against Jonathan Sacoolas.

Alternatively, Defendants move for partial dismissal under Rule 12(b)(6). Applying Virginia's choice of law analysis, this case is governed by English substantive law. Based on the application of English law, Defendants seek the dismissal of all claims asserted against Jonathan Sacoolas on the grounds he was not driving the vehicle and there are insufficient allegations to support vicarious liability (Counts II, IV, VI, VIII and XI). Defendants seek the dismissal of all claims asserted by the Estate, on the grounds the Estate lacks standing to bring any claim apart from a claim under the Law Reform (Miscellaneous Provisions) Act 1934, which is not pled. (Counts I, II, III, IV, V and VI).  Further, Defendants seek the dismissal of all claims asserted by the beneficiaries under any theory of liability other than the Fatal Accidents Act 1976. (Counts V, VI and XI).[2] Should this case proceed, it should be limited to claims by the Estate under the Law Reform (Miscellaneous Provisions) Act 1934, claims asserted by the Beneficiaries under the Fatal Accidents Act 1976 for funeral expenses, and claims asserted by Tim Dunn for recognized psychiatric distress caused by witnessing the immediate aftermath of the accident.

## II.    FACTUAL ALLEGATIONS IN COMPLAINT

This case arises from a motor vehicle accident on the evening of August 27, 2019 near Croughton, Northamptonshire, England. (Compl. ¶ 1). The Complaint alleges the Defendant, Anne Sacoolas, was driving a vehicle owned by Jonathan Sacoolas on the wrong side of the road. (Compl. ¶ 1). Anne Sacoolas is a United States citizen who had been living in the United Kingdom for several weeks prior to the accident. (Compl. ¶¶ 9 & 14) She was operating a British model Volvo SUV with the steering wheel on the right hand side. (Compl. ¶ 17). The Complaint alleges that as Anne Sacoolas was driving from RAF Croughton United States Air Force base to her home

---

[2] Defendants also seek the dismissal of unavailable remedies in Count VII.

she began driving on the incorrect side of the road. (Compl. ¶¶ 14 & 17). Anne Sacoolas's vehicle collided with a motorcycle operated by nineteen-year-old Harry Dunn. (Compl. ¶¶ 14-18).

A passerby stopped at the scene and called for assistance. (Compl. ¶ 25). When the paramedics arrived, Harry Dunn was "conscious, breathing, and able to speak." (Compl. ¶ 26). Although he suffered a mild head injury, he suffered multiple open fractures, degloving injuries and internal injuries. (Compl. ¶ 19).

According to the Complaint, Tim Dunn, Harry Dunn's father, arrived at the scene and saw his son's condition. He also saw that Harry Dunn was awake and appeared anxious and scared. (Compl. ¶ 30). Harry Dunn was alive and transported by ambulance to the hospital, however, he died at the hospital. (Compl. ¶ 34). Tim Dunn alleges that based on "watching his son Harry struggle for his life in extreme pain and discomfort, [he] . . . has suffered lasting, severe emotional distress and injury." (Compl. ¶ 35). Tim Dunn alleges he often suffers from "deep sadness, sleeplessness, headaches, a lack of energy, and irritability." (Compl. ¶ 36).

As it relates to Jonathan Sacoolas, the Complaint alleges he was the owner of the motor vehicle operated by Anne Sacoolas and that Anne Sacoolas was driving the Sacoolas children home from dinner at the time of the accident. (Compl. ¶¶ 1 & 44).

### III.    ARGUMENT

Defendants move to dismiss this case in its entirety under the doctrine of *forum non conveniens*. England is an available and adequate venue better positioned to efficiently address the needs of the case. Alternatively, Defendants move for partial dismissal under Rule 12(b)(6) for the failure to state a plausible claim for relief under English law.

1. **VENUE –** *FORUM NON CONVENIENS*

Defendants move to dismiss this case under the common law doctrine of *forum non conveniens.* England is a proper alternative venue and that is both available and adequate. "When moving to dismiss an action on *forum non conveniens* grounds, the defendant has the burden of proof to show the existence of an alternate, adequate, and available forum." Glustian v. Peter, 591 F.3d 724, 731 (4th Cir. 2010). The defendant must provide "enough information to the District Court to demonstrate the alternative forum is both available and adequate." Id. (citations omitted). "Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amendable to process' in the [foreign] jurisdiction." Id. (citing Piper Aircraft Co v. Reyno, 454 U.S. 235, 254 n. 22 (1981) (quoting Gilbert, 330 U.S. at 506-07)). In certain cases, a forum may be considered unavailable "where the remedy offered by the other forum is clearly unsatisfactory" or the cause of action is not recognized. El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 677 (D.C. Cir. 1996) (citing Piper Aircraft, 454 U.S. at 254 n.22). A forum is considered adequate when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the same benefits as they might receive in an American court." Fidelity Bank PLC v. N. Fox Shipping N.V., 242 Fed. App'x 84, 90 (4th Cir. 2007). While there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, that "presumption applies with less force when the plaintiff or real parties in interest are foreign." Piper Aircraft, 454 U.S. at 266.

In <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947),[3] the United States Supreme Court outlined both private and public factors to be considered. The court explained that important private interest considerations include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.

<u>Id.</u> at 508. Factors of public interest include administrative difficulties, the burden of jury duty, the forum's relationship to the controversy and the application of the choice of law. <u>Id.</u> at 509.

**A.  England is an Available Forum.**

Although Anne Sacoolas and Jonathan Sacoolas are both citizens of the United States and are not subject to compulsory process in England, both Anne Sacoolas and Jonathan Sacoolas agree to authorize service of a civil complaint arising from the subject accident through counsel. (Declarations of Anne Sacoolas and Jonathan Sacoolas, Exhibits 1 & 2). Further, under the current law, Plaintiffs continue to have a direct cause of action against USAA Limited pursuant to the EU Fourth Motor Insurance Directive Council Directive 2000/26 art. 3, 2000 O.J. (L 181) 0065.[4] Additionally, the plaintiffs can rely on section 151 of the Road Traffic Act 1988, c. 52, which provides that a motor insurer must satisfy any judgment against persons insured. Thus, any judgment could be enforced against USAA Limited. Therefore, England is an available forum. <u>Glustian</u>, 591 F.3d at 731.

---

[3] <u>Gilbert</u> has been superseded by statute as it relates to efforts to transfer venue between states. <u>See</u> 28 U.S.C. § 1404(a). The doctrine of *forum non conveniens* continues to apply where the proposed alternative forum is abroad. <u>See</u> <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 722 (1996).

[4] There is significant uncertainty surrounding whether this direct cause of action will persist once England formally exists the EU on December 31, 2020. Thus, to assure this claim is preserved it must be presented prior to December 31, 2020. USAA Limited will agree to accept service of process for a claim arising from the subject motor vehicle accident at the London office.

### B.  England is an Adequate Forum.

England is an adequate forum because the plaintiffs will not be deprived of any claims or remedies. As addressed more fully below, the application of Virginia's choice of law analysis clearly demonstrates this case is governed by English substantive law, regardless of the forum. Any potential procedural differences do not render England an improper or inadequate forum.

Although, Defendants do not believe there is a factual basis for any claim against Jonathan Sacoolas under English substantive law and deny that the Complaint states a claim for Intentional Infliction of Emotional Distress, Defendants do not dispute that Anne Sacoolas' negligent operation of a motor vehicle is the proximate cause of Harry Dunn's death.  Neither Anne Sacoolas nor Jonathan Sacoolas will agree to return to England for depositions or trial, however, their appearance would be unnecessary to evaluate the quantum of plaintiffs' damages. Additionally, to the extent their testimony is required, it can be obtained via remote video conference. Therefore, England is an adequate forum.

### C.  England is a Convenient Forum.

England is the more convenient forum. The accident occurred in England. The Plaintiffs reside in England. The police who investigated the accident are in England. The medical professionals who treated Harry Dunn are in England. The medical professionals Tim Dunn may rely upon to support his claim for emotional distress will be located in England. The Defendants may be unable to compel the depositions of damages witnesses, including health care providers and first responders, should this case proceed in the United States.

English substantive law applies to the case. English courts have an interest in applying English law and English remedies. While the residents of Alexandria, Virginia have little to no

connection to the case, English residents have a significant connection to the case, the law, and the remedies available in England for wrongful death claims.

The obstacle to proceeding with this case in England was that fact that Anne Sacoolas and Jonathan Sacoolas are not subject to service of process. However, English law addresses this obstacle by providing a direct cause of action against USAA Limited, and Anne Sacoolas and Jonathan Sacoolas have removed this obstacle by consenting to accepting service. Therefore, defendants move to dismiss this case because England is a more convenient forum and is both available and adequate to address the plaintiffs' claims.

## 2. RULE 12(b)(6) FAILURE TO STATE A CLAIM FOR RELIEF

Alternatively, should this court decline to dismiss this case under the doctrine of *forum non conveniens*, Defendants move for partial dismissal under Rule 12(b)(6). This case is governed by English substantive law. Defendants seek the dismissal of all claims asserted against Jonathan Sacoolas on the grounds he was not driving the vehicle and there are insufficient allegations to support vicarious liability (Counts II, IV, VI, VIII and XI). Defendants seek the dismissal of all claims asserted by the Estate, on the grounds the Estate lacks standing to bring any claim apart from a claim under the Law Reform (Miscellaneous Provisions) Act 1934 (Counts I, II, III, IV, V and VI).  Further, Defendants seek the dismissal of all claims asserted by the beneficiaries under any theory of liability other than the Fatal Accidents Act 1976. (Counts V, VI and XI).

### A. Choice of Law

This is a diversity action between citizens of the United Kingdom and citizens of the United States of America. When sitting in diversity jurisdiction, federal courts must apply the substantive law as announced by the forum state's highest court. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1936). A federal court sitting in Virginia and exercising diversity jurisdiction applies Virginia's

choice of law rules. Insteel Indus. v. Costanza Constr. Co., 276 F. Supp. 2d 479, 483 (E.D. Va. 2003). "[T]he settled choice of law rule for tort claims in Virginia is *lex loci delicti* – the law of the place of the wrong." Id. at 486 (citing Jones v. R.S. Jones & Assoc., 246 Va. 3 (1993)). The place of the wrong is defined as "the place where the last event necessary to make an actor liable for an alleged tort takes place." Id. For cases arising from motor vehicle accidents, the place of the wrong is the location of the crash. See e.g. Valencia v. First Tee Transport, 2008 U.S. Dist. LEXIS 135166* at *5 (W.D. Va. 2008) (applying North Carolina law based on the application of Virginia choice of law principles because the motor vehicle accident occurred in Roxboro, North Carolina).

The Complaint seeks to assert claims that sound in tort. The motor vehicle accident that gives rise to the claims occurred in England. Therefore, applying Virginia's choice of law rule for tort claims, English law governs the substantive claims in this case.

## B. Legal Standard.

A Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." Twombly, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Id. (citing Twombly, 550 U.S. at 570).

## C. Argument

The Complaint contains duplicative counts, includes causes of action not recognized under English law, and seeks unavailable remedies. Defendants seek the dismissal of all claims asserted

against Jonathan Sacoolas, the dismissal of all claims asserted by the Estate, and the dismissal of all claims asserted by the Beneficiaries under any theory of liability other than the Fatal Accidents Act. There are insufficient factual allegations to state a plausible claim against Jonathan Sacoolas, the Estate's only remedy is found under the Law Reform (Miscellaneous Provisions) Act, and the Beneficiaries' only remedy is under the Fatal Accidents Act. All other claims brought by the Estate or Beneficiaries must be dismissed with prejudice.

i.   The Complaint fails to state a plausible claim against Jonathan Sacoolas. (Counts II, IV, VI, VIII and XI).

Based on the allegations in the Complaint, Jonathan Sacoolas was not operating the motor vehicle at the time of the accident. The factual basis for the claims against Jonathan Sacoolas are (1) he owned the vehicle, and (2) Anne Sacoolas was driving the Sacoolas children home at the time of the collision. These allegations fail to support a plausible cause of action against Jonathan Sacoolas under English law.

Counts II, VI, VIII and XI seek to hold Jonathan Sacoolas vicariously liable for the acts or omissions of his wife, Anne Sacoolas. Under English law, to fix vicarious liability on the non-driving owner of a vehicle, the driver must be using the vehicle for the owner's purposes under delegation of a task or duty. Morgans v. Launchbury [1972] 2 All ER 606 (HL). Launchbury involved the husband's use of a vehicle owned by his wife. The husband had been out drinking and asked a friend to drive him home. There was evidence at trial that the husband had driven the vehicle to work before going to the bar and that his wife had previously asked that he have a friend drive him home if he was too intoxicated to drive. The trial court found this record was sufficient to impose liability on the wife as she gave her husband permission to drive the vehicle and it was in her interest for her husband to come home safely. The Court of Appeal affirmed this decision, determining the wife's interest or concern in the purpose for which the vehicle was used was

sufficient to create an agency relationship. The House of Lords, however, reversed the decision of the Court of Appeal.

Lord Wilberforce explained, the "interest or concern" test for vicarious liability is vague and unworkable. "For I regard it as clear that in order to fix vicarious liability on the owner of a car . . . it must be shown that the driver was using it for the owner's purposes, under delegation of task or duty. The substitution for this clear conception of a vague test based on 'interest' or 'concern' has nothing in reason or authority to commend it." Morgans v. Launchbury [1972] 2 All ER 606 (HL) at 609b-d. The House of Lords also rejected the creation of a court formulated "matrimonial car" rule, seeking to suggest that "shopping, going to work, [and] transporting children" are all purposes of the owner of the matrimonial car. Id. at 610a-b. As Viscount Dilhorne put it, "It is not . . . the law of this country that the owner of chattel is responsible in law for damage done by the negligence of a person to whom he has lent it . . ." Id. at 612b-c. He further explained "[a] person permitted to drive another's car does not become the latter's agent if, on his own volition, he uses it for the owner's benefit; a son driving his father's car with permission does not become his father's agent because, remembering that his father has a suit at the cleaners, he uses the car to collect it." Id. at 613c-d.

Following Launchbury, the Court of Appeal again considered the issue of a husband's vicarious liability for an accident involving his wife in Norwood v. Navan, [1981] EWCA (Civ) 457. In Norwood, the vehicle was owned by the husband and was used by the wife on the day of the accident for both a personal errand and to perform family shopping. The trial court concluded the wife was acting as the husband's agent because she was performing a joint obligation in shopping for the family. Considering carefully the language of the House of Lords in Launchbury, the Court of Appeal reversed the trial court's ruling. In granting the appeal, Purchas J noted that

the "concept of general liability as between spouses encapsulated in the expression 'the matrimonial car' was not accepted by the House of Lords. In my judgment the judge here has fallen into the error of constructing a specific act of delegation from the relationship between the parties – that is, husband and wife." He concluded that based on <u>Launchbury</u>, there must be "direct delegation" to impose vicarious liability.

The test is whether the driver of the vehicle was the owner's servant or acting as the owner's agent at the subject time. To demonstrate agency, there must be facts to show the driver was using the vehicle at the owner's request or instruction, and was doing so in performance of a task or duty delegated to the driver from the owner. In this case, there are no factual allegations to suggest Anne Sacoolas was acting as Jonathan Sacoolas' servant or agent in transporting their children home. Anne and Jonathan Sacoolas are husband and wife. They have children together. They share responsibility for transporting their children. The obligation is not Jonathan Sacoolas' to delegate or assign. Further, there are no allegations that Jonathan Sacoolas instructed Anne Sacoolas to use his vehicle to take the children home and there are no allegations that Anne Sacoolas was acting on behalf of Jonathan Sacoolas to take their children home. It is not reasonable to infer that Anne Sacoolas was acting as her husband's servant or was under his control as his agent in transporting her own children back to their residence.[5] Although Jonathan Sacoolas certainly has an interest in his children being transported home, as discussed in <u>Launchbury</u> and confirmed in <u>Norwood</u>, an interest in the purpose of the trip is not "direct delegation" and does not create an agency relationship. Therefore, the factual allegations set forth in the Complaint fail to

---

[5] Certainly in 2020 there is no reasonable basis to infer that Jonathan Sacoolas, as the husband, is the "head of the household" and therefore responsible for delegating household responsibilities to his wife. The reasonable inference is that they are equal partners with equal responsibility in fulfilling household obligations.

state a plausible claim for vicarious liability against Jonathan Sacoolas and Counts II, VI, VIII and XI should be dismissed.

Count IV seeks to assert a claim of Negligent Entrustment on behalf of the Estate against Jonathan Sacoolas. English law does not recognize a separate tort for Negligent Entrustment. As addressed below, even if England recognized a claim for Negligent Entrustment, any cause of action Harry Dunn may have possessed was extinguished by his death. By statute, his Estate has a claim under the Law Reform (Miscellaneous Provisions) Act 1934. Further, there are no facts to support a negligent entrustment claim even as understood under Virginia law. The Complaint offers the conclusory assertion that Jonathan Sacoolas "knew or should have known that Defendant Anne Sacoolas was not reasonably fit to safely operate or otherwise be in possession of a motor vehicle at the time of the accident." (Compl. ¶ 65). No facts are alleged to support this conclusion. Therefore, Count IV should be dismissed without leave to amend because it is not recognized under English law, the Estate lacks standing to pursue any such claim, and the allegations in the complaint fail to state a plausible claim for relief.

ii.   <u>The Complaint fails to state a plausible claim on behalf of the Estate. (Counts I, II, III, IV, V and VI).</u>

The Estate may only bring claims pursuant to the Law Reform (Miscellaneous Provision) Act 1934. In England, any claims for negligence on behalf of the Deceased are extinguished on death save insofar as provided for under the survival statutes. LR (MP) Act 1934 provides:

1.   Effect of death on certain causes of action

1.   Subject to the provisions of this section, on the death of any person after the commencement of this Act all causes of action subsisting or vested in him shall survive against, or, as the case may be, for the benefit of his estate. Provided that this subsection shall not apply to causes of action for defamation . . .

[(1A) The right of person to claim under section 1A of the Fatal Accidents act of 1976 (bereavement) shall not survive for the benefit of his estate on his death.]

2.  Where a cause of action survives as aforesaid for the benefit of the estate of a deceased person, the damages recoverable for the benefit of that person: --

[(a) shall not include—
     (i) any exemplary damages;
     (ii) any damages for loss of income in respect to any period after that person's death.]

(b) . . .
(c) where the death of that person has been caused by the act or omission which gives rise to the cause of action, shall be calculated without reference to any loss or gain to his estate consequent on his death, except that a sum in respect of funeral expenses may be included.

. . . .

5.  The rights conferred by this Act for the benefit of the estates of deceased persons shall be in addition to and not in derogation of any rights conferred on the dependents of deceased persons by the Fatal Accidents Acts 1846 to 1908 . . . and so much of this Act as relates to causes of action against the estates of deceased persons shall apply in relation to causes of action under the said Act as it applies in relation to other causes of action not expressly excepted from the operation of subsection (1) of this section.

. . . .

The Estate may recover general damages for pain and suffering and loss of amenity which the deceased endured prior to death under the LR (MP) Act of 1934. The Estate may also recover funeral costs under the LR (MP) Act 1934. The Estate is not entitled to recover for bereavement, loss of income suffered in relation to the death after the date of the deceased's death, or exemplary damages. Importantly, however, the Complaint fails to plead a claim under the LR (MP) Act 1934. As discussed below, the Estate does not have standing to assert a Wrongful Death claim under the Fatal Accidents Act. Under English law, the Estate only has standing to pursue a Survival claim pursuant to LR (MP) Act 1934 and subject to the specific limited remedies outlined by the statute.

The Complaint fails to bring a claim under LR (MP) Act 1934 and, therefore, Counts I, II, III, IV, V and VI asserted by the Estate must be dismissed.

    iii.    <u>The beneficiaries' exclusive remedy is under the Fatal Accident Act. (Counts V, VI, VII and XI).</u>

"It is ancient legal history that under English common law there was no right to recover damages for wrongful death, just as a cause of action for personal injuries did not survive the death of the injured person or of the tort-feasor." <u>Grant v. Guidotti</u>, 66 A.D. 2d 545 (N.Y. 1979). The Fatal Accidents Act 1976 creates a cause of action for wrongful death and is the exclusive remedy for beneficiaries under English law. There is no "wrongful death" action recognized under English law apart from a claim under the Fatal Accidents Act 1976.

The Fatal Accidents Act provides in relevant part:

**1 Right of action for wrongful act causing death.**

1.  If death is caused by any wrongful act, neglect or default which is such as would (if death had not ensued) have entitled the person injured to maintain an action and recover damages in respect thereof, the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured.

2.  Subject to section 1A(2) below, every such action shall be for the benefit of the dependants of the person ("the deceased") whose death has been so caused.

3.  In this Act "dependant" means –
    a.   The wife or husband or former wife or husband of the deceased;
    . . . .
    c.  any parent or other ascendant of the deceased;
    . . . .
    g. any person who is, or is the issue of, a brother,  sister, uncle or aunt of the deceased.
    . . . .

**1A Bereavement.**

1.  An action under this Act may consist of or include a claim for damages for bereavement.

2.  A claim for damages or bereavement shall only be for the benefit ---
    a.  Of the wife or husband [or civil partner] of the deceased;
    (aa) of the cohabiting partner of the deceased; and[6]
    b.  Where the deceased was a minor who was never married or a civil partner –
        i.  His parents, if he was legitimate; and
        ii. His mother, if he was illegitimate.

. . . .

3)  Subject to subsection (5) below, the sum to be awarded as damages under this section shall be [£15,120]

## 2 Persons entitled to bring the action.

1.  The action shall be brought by and in the name of the executor or administrator of the deceased.

2.  If –
    a.  There is no executor or administrator of the deceased, or
    b.  No action is brought within six months after the death by and in the name of an executor or administrator of the deceased, the action may be brought by and in the name of all or any of the persons for whose benefit an executor or administrator could have brought it.

3.  Not more than one action shall lie for and in respect of the same subject matter of complaint.

4.  The plaintiff in the action shall be required to deliver to the defendant or his solicitor full particulars of the persons for whom and on whose behalf the action is brought and of the nature of the claim in respect of which damages are sought to be recovered.

## 3 Assessment of damages.

1.  In the action such damages, other than damages for bereavement, may be awarded as are proportioned to the injury resulting from the death to the dependants respectively.

2.  After deducting the costs not recovered from the defendant any amount recovered otherwise than as damages for bereavement shall be divided among the dependants in such shares as may be directed.

3.  In an action under this Act where there fall to be assessed damages payable to a widow in respect to the death of her husband there shall not be taken account the re-marriage of the widow or her prospects of re-marriage.

---

[6] The law changed on October 6 2020.

4. In an action under this Act where there fall to be assessed damages payable to a person who is a dependant by virtue of section 1(3)(b) above in respect to the death of the person with whom the dependant was living as husband or wife [or civil partner] there shall be taken into account (together with any other matter that appears to the court to be relevant to the action) the fact that the dependant had no enforceable right to financial support by the deceased as a result of their living together.

5. If the dependants have incurred funeral expenses in respect of the deceased, damages may be awarded in respect to those expenses.

In this case, claims for wrongful death have been asserted by Charlotte Charles (mother), Tim Dunn (father), and Niall Dunn (brother). These parties are each "dependants" as defined by section 1(3)(c) and/or (g) of the Fatal Accidents Act. The Complaint acknowledges Harry Dunn was nineteen years old at the time of the accident. (Compl. ¶ 1). Therefore, because Harry Dunn was not a minor at the time of his death, Charlotte Charles, Tim Dunn and Niall Dunn are not entitled to bereavement damages. See FAA 1A(2).

Under the FAA the dependants' remedies are limited to funeral expenses, and dependency on income and services. Parents and siblings are rarely awarded dependency income and services for the loss of an adult child/sibling and there are no allegations in this case to support a plausible dependency award. There are no allegations that Harry Dunn contributed to household expenses or that his parents or brother had a reasonable expectation of pecuniary benefit. See Claims for Wrongful Death (1997) Consultation Paper No. 148 para. 2.12. "This includes, for example, the loss of the money that the deceased brought into the household, the loss of provisions of goods and money, the loss of a pension received in respect of the deceased partner, or the loss of fringe benefits such as a company car." Id.  While it is technically *possible* for Harry Dunn's parents and brother to have a dependency claim under the FAA, there are no factual allegations that, if true,

would create a reasonable expectancy of dependency on future income or services provided by the deceased. Therefore, the Complaint fails to state a plausible claim for a dependency award.

Defendants move to dismiss Counts V and VI on the grounds that Virginia law does not apply and English law does not recognize a "wrongful death" claim separate from the Fatal Accidents Act. Count VII must be limited to funeral expenses, because bereavement and survival damages are unavailable under the statute and there are no factual allegations to support a plausible claim for dependency damages.

iv.   The Complaint fails to state a plausible claim for Intentional Infliction of Emotional Distress ("IIED") (Count IX).

Defendants move to dismiss the IIED claims asserted by Charlotte Charles, Tim Dunn and Niall Dunn against Anne Sacoolas in Count IX on the grounds that the factual allegations fail to support a plausible claim for the tort of Intentional Infliction of Harm under English law.[7] The term "Intentional Infliction of Emotional Distress" is not adopted in English Law. However, a cause of action for "tort of intentional infliction of harm" is recognized in limited circumstances. Wilkinson v. Downton [1897] 2 QB 57. In Wilkinson, the jury awarded the plaintiff damages for the physical suffering she endured as a result of severe shock that was caused when the defendant, playing a practical joke, falsely informed her that her husband had been injured in an accident. Wright J. held that the tort required an act be done "willfully," that is "calculated to cause physical harm," and which does in fact cause "physical harm." Id. at [58].

More recently, in OPO v. Rhodes [2015] UKSC 32 (also known as O v. A) the Supreme Court providing an obiter judgment which clarified the necessary elements suggested by Wilkinson to establish the tort of intentional infliction of harm in a modern context. The Court

---

[7] Defendants do not move to dismiss Count X, Tim Dunn's claim of negligence against Anne Sacoolas for emotional shock.

confirmed the tort consisted of three necessary components: (1) words or conduct directed at the claimant for which there is no justification or excuse, (2) the mental element requiring an intention to cause at least severe mental or emotional distress, and (3) the consequence of physical harm or recognized psychiatric illness. As it relates to the element of intent, the Court clarified that the former doctrine imputing intention was "unsound in principle" and "has no proper role in the modern law of tort." Id. at [81]. Subjective intent may be imputed only as a matter of fact by examining the defendant's conduct in the totality of circumstances. It is wrong to deem as a matter of law that a party always intends the natural consequences of his or her acts. Recklessness is insufficient. The necessary mental element is intention to cause physical harm or severe mental or emotional distress. Id. at [87].

In this case, the factual allegations fail to demonstrate the conduct element, mental element and consequence element. The alleged conduct that gives rise to the IIED claim are the alleged failure to call an ambulance, and leaving England to return home to the United States. (Compl. ¶¶ 90-92). There are no allegations that these actions were directed toward Charlotte Charles, Tim Dunn or Niall Dunn. There are no allegations that Anne Sacoolas even knew of Charlotte Charles, Tim Dunn or Niall Dunn at the time of the alleged conduct. It is certainly not reasonable to infer that these actions were *intended* to cause Charlotte Charles, Tim Dunn or Niall Dunn physical harm or recognized psychiatric illness. Subjective intent may not be imputed based on foreseeability or even a recklessness standard. There must be factual allegations to plausibly demonstrate the conduct was taken with the intent to cause physical harm or psychiatric injury. There are no such allegations in the Complaint. Further, there are no factual allegations to demonstrate Charlotte Charles, Tim Dunn or Niall Dunn suffered physical harm or recognizable psychiatric distress. Therefore, Plaintiffs claims for IIED in Count IX should be dismissed.

IV.     **CONCLUSION**

WHEREFORE, the foregoing considered, Defendants Anne Sacoolas and Jonathan Sacoolas move this court to dismiss this action under the doctrine of *forum non conveniens* without prejudice to being reasserted in England.

Alternatively, should his Court decline the dismiss this matter under the doctrine of *forum non conveniens*, Defendants seek the following relief:

1. The dismissal of all claims against Jonathan Sacoolas with prejudice on the grounds the factual allegations fail to state a claim for vicarious liability under English law; (Counts II, IV, VI, VIII and XI)

2. The dismissal of all claims asserted by the Estate on the grounds the Estate lacks standing to assert any claim other than a claim pursuant to the LR (MP) Act 1934, which has not been asserted; (Counts I, II, III, IV, V and VI)

3. The dismissal of all "Wrongful Death" claims asserted under Virginia law and/or asserted outside of the Fatal Accidents Act 1976; (Counts V and VI)

4. The dismissal of/striking all unavailable remedies in Count VII, specifically, any claim for bereavement or dependency damages. Count VII should be limited to funeral expenses;

5. The dismissal of Count XI, Intentional Infliction of Emotional Distress, on the grounds that factual allegations fail to demonstrate a plausible claim for relief as the allegations fail to demonstrate conduct that was intended to produce physical harm or psychiatric illness.

**ANNE SACOOLAS**
**and**
**JONATHAN SACOOLAS**
By Counsel

_/s/ John D. McGavin_
John D. McGavin, VSB No. 21794
Anna G. Zick, VSB No. 86057
Bancroft, McGavin, Horvath & Judkins, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:      (703) 385-1000
Facsimile:      (703) 385-1555
jmcgavin@bmhjlaw.com
azick@bmhjlaw.com
Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Defendants' Memorandum in Support of Motion to Dismiss was served via efiling on the 30th day of October, 2020 on the following:

Steven J. Toll, VSB #15300
Agnieszka M. Fryszman, admitted *pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Stoll@cohenmilstein.com
AFryszman@cohenmilstein.com

Theodore J. Leopold, admitted *pro hac vice*
Leslie M. Kroeger, admitted *pro hac vice*
Poorad Razavi, admitted *pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
tleopold@cohenmilstein.com
lkroeger@cohenmilstein.com
prazavi@cohenmilstein.com
*Attorneys for Plaintiffs*

                                        */s/ John D. McGavin*____
                                        John D. McGavin