**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| CHARLOTTE CHARLES and TIM DUNN, Individually and as Co-Administrators of the ESTATE OF HARRY DUNN, and NIALL DUNN, Individually, | |
| *Plaintiffs*, | Case No.: 1:20-cv-01052 |
| v. | |
| ANNE SACOOLAS and JONATHAN SACOOLAS, | |
| *Defendants*. | |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................... 1

II. LEGAL STANDARD ...................................................................................................... 3

III. FACTUAL ALLEGATIONS .......................................................................................... 4

IV. ARGUMENT.................................................................................................................. 6

      A.      PLAINTIFFS' ACTION PROPERLY BELONGS IN THIS COURT ................. 6
            1.      The Sacoolases Do Not Meet Their Heavy Burden to Show Forum
                     Non Conveniens Dismissal is Appropriate as Required by the
                     Fourth Circuit ............................................................................................ 7
            2.      The Sacoolases Have Not Met Their Heavy Burden to Show the
                     Private and Public Interest Factors Weigh Strongly in Favor of an
                     English Forum ......................................................................................... 10

      B.      PLAINTIFFS' CLAIMS SATISFY THE PLEADING STANDARD OF
            RULE 12(b)(6)......................................................................................... 19
            1.      Choice of Law........................................................................................ 19
             2.      As the Sacoolases acknowledge, Plaintiffs have stated claims
                     preserved by the Law Reform (Miscellaneous Provision) Act 1934. ....... 20
            3.      Plaintiffs can Recover Intangible Damages under the Fatal
                     Accidents Act 1976................................................................................. 22
            4.      The Complaint States Plausible Claims for the Vicarious Liability
                     of Jonathan Sacoolas ............................................................................. 24
            5.      Leave to Amend .................................................................................... 26

V. CONCLUSION ............................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Se. Wholesale Corp.*,
   978 F. Supp. 2d 615 (E.D. Va. 2013) .......................................................................23

*Am. Dredging Co. v. Miller*,
   510 U.S. 443 (1994)....................................................................................................10

*Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*,
   940 F. Supp. 554 (S.D.N.Y. 1996).............................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................3

*Baise v. Warren*,
   164 S.E. 655 (1932) ....................................................................................................20

*Behrens v. Arconic, Inc.*,
   ---F. Supp. 3d ---, 2020 WL 5542387 (E.D. Pa. Sept. 16, 2020)............................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................3

*Bocock v. Specialized Youth Servs. of Va., Inc.*,
   No. 5:15-cv-50, 2015 WL 1611387 (W.D. Va. Apr. 10, 2015)...............................23

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*,
   145 F.3d 481 (2d Cir. 1998).......................................................................................17

*Butler v. United States*,
   702 F.3d 749 (4th Cir. 2012) .......................................................................................3

*Carijano v. Occidental Petroleum Corp.*,
   643 F.3d 1216 (9th Cir. 2011) .............................................................................11, 13

*Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*,
   21 F. Supp. 3d 620 (W.D. Va. 2014)..........................................................................23

*Corinthian Mortgage Corp v. ChoicePoint Precision Mktg., LLC*,
   No. 1:07CV832 (JCC), 2008 WL 11374386 (E.D. Va. Apr. 4, 2008) ....................19

*DiFederico v. Marriott Int'l, Inc.*,
   714 F.3d 796 (4th Cir. 2013) ........................................................... *passim*

*ElcomSoft, Ltd. v. Passcovery Co.*,
   958 F. Supp. 2d 616 (E.D. Va. 2013) .......................................................................18

*Ferruzzi Italia, S.p.A. v. Trade & Transp., Inc.*,
   683 F. Supp. 131 (D. Md. 1988) ................................................................................17

*Fid. Bank PLC v. N. Fox Shipping N.V.*,
   242 F. App'x 84 (4th Cir.2007) ..................................................................................9

*Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*,
   665 F.3d 384 (2d Cir. 2011) .......................................................................................9

*Foman v. Davis*,
   371 U.S. 178 (1962) ...........................................................................................3, 26

*Frye v. Commonwealth*,
   231 Va. 370, 345 S.E.2d 267 (1986) .........................................................................19

*Gallick v. United States*,
   542 F. Supp. 188 (M.D. Pa. 1982) ............................................................................21

*Galustian v. Peter*,
   591 F.3d 724 (4th Cir. 2010) ..........................................................................3, 7, 8, 9

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) .....................................................................................6, 10, 13

*Int'l Masonry Training & Educ. Found. v. Haw. Masons' Training Fund*,
   No. 8:18-cv-3320, 2019 WL 1492684 (D. Md. Apr. 3, 2019) ...................................13

*Johnson v. City of Shelby*,
   574 U.S. 10 (2014) ..................................................................................................20

*Kamel v. Hill-Rom Co.*,
   108 F.3d 799 (7th Cir. 1997) .....................................................................................8

*King v. Rubenstein*,
   825 F.3d 206 (4th Cir. 2016) ...................................................................................20

*Kleinschmidt v. Universal Seafood Co.*,
   201 F. Supp. 96 (E.D. Pa. 1961) ...............................................................................21

*Kontoulas v. A.H. Robins Co.*,
   745 F.2d 312 (4th Cir. 1984) ..................................................................................6, 7

*Lacey v. Cessna Aircraft Co.*,
   862 F.2d 38 (3d Cir. 1988) ........................................................................................7

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
   337 F. Supp. 3d 274 (S.D.N.Y. 2018) .......................................................................15

*Lehman v. Humphrey Cayman, Ltd.*,
713 F.2d 339 (8th Cir. 1983) ..............................................................18

*Level at 401 LP v. First Co.*,
E.D.N.C. No. 5:20-CV-85-M, 2020 WL 4085226 (E.D.N.C. July 20, 2020) ........................22

*London Film Prods. Ltd. v. Intercontinental Commc'ns, Inc.*,
580 F. Supp. 47 (S.D.N.Y. 1984)..........................................................16

*Macronix Int'l Co. v. Spansion Inc.*,
No. 3:13-cv-679, 2014 WL 934521 (E.D. Va. Mar. 10, 2014)..............................13

*Mang v. City of Greenbelt*,
No. 11-cv-1891, 2012 WL 115454 (D. Md. Jan. 13, 2012)................................21

*Martin v. Duffy*,
858 F.3d 239 (4th Cir. 2017) ..............................................................25

*McDonald v. Suggs*,
No. 5:07-cv-339, 2008 WL 2129860 (E.D.N.C. May 20, 2008)............................21

*McMillan v. McMillan*,
219 Va. 1127, 253 S.E.2d 662 (1979)....................................................19

*MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*,
No. 3:09-CV-78, 2010 WL 2757351 (W.D. Va. July 13, 2010) ......................11, 12

*Millennium Inorganic Chemicals Ltd. v. Nat'l Union Fire Ins. Co.*,
686 F. Supp. 2d 588 (D. Md. 2010) ..................................................7, 11

*Morehead v. Barksdale*,
263 F.2d 117 (4th Cir. 1959) ..............................................................11

*Penge v. Hillenbrand Indus., Inc.*,
228 F. Supp. 2d 929 (S.D. Ind. 2002) ....................................................17

*Peregrine Myanmar Ltd. v. Segal*,
89 F.3d 41 (2d Cir. 1996) ..................................................................7

*Piper Aircraft v. Reyno*,
454 U.S. 235 (1981)..................................................................8, 11, 17

*Republican Party v. Martin*,
980 F.2d 943 (4th Cir. 1992) ..............................................................3

*SAS Inst., Inc. v. World Programming Ltd.*,
468 F. App'x 264 (4th Cir. 2012) (unpublished)....................................3, 6, 7

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) ............................................................3

*Ship Const. & Funding Servs. (USA), Inc. v. Star Cruises PLC*,
  174 F. Supp. 2d 1320 (S.D. Fla. 2001) .........................................17

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007).................................................................6, 10

*Spring v. United States*,
  833 F. Supp. 575 (E.D. Va. 1993) (Ellis, J.) ...............................19

*Sund v. Marriott Int'l, Inc.*,
  No. 19-cv-2806, 2020 WL 2085469 (D. Md. Apr. 30, 2020)........12

*Tang v. Synutra Int'l, Inc.*,
  656 F.3d 242 (4th Cir. 2011) ....................................................6, 9

*Tellez v. Madrigal*,
  223 F. Supp. 3d 626 (W.D. Tex. 2016).........................................18

*Vantu v. Echo Recovery, L.L.C.*,
  85 F. Supp. 3d 939 (N.D. Ohio 2015)...........................................25

*Veney v. Wyche*,
  293 F.3d 726 (4th Cir. 2002) .......................................................25

*Warn v. M/Y Maridome*,
  961 F. Supp. 1357 (S.D. Cal. 1997)..............................................15

*Williams v. Wilson*,
  No. 05-C-227, 2005 WL 2100980 (W.D. Wis. Aug. 30, 2005) ........9

*Wright v. Old Gringo Inc.*,
  No. 17-cv-1996, 2019 WL 2436779 (S.D. Cal. June 11, 2019) ............15

*In re XE Servs. Alien Tort Litig.*,
  665 F. Supp. 2d 569 (E.D. Va. 2009) ...........................................3

## U.K. Cases

*AB v KL*,
  [2019] EWHC 611 (QB), [2020] P.I.Q.R. Q21 ....................................22

*Beesley v. New Century Grp. Ltd.*,
  [2008] EWHC 3033 (QB), HQ 08X02073 ...........................................22

*CC v. TD*,
    [2018] EWHC 1240 (QB), HQ17P00106 ............................................................................22

*Launchbury v. Morgans*,
    [1972] R.T.R. 406 (HL) ...............................................................................................24, 25

*Norwood v Navan*,
    [1981] R.T.R. 457 .......................................................................................................24, 25


**U.K. STATUTES**

Fatal Accidents Act 1976 ...................................................................................................22, 23

Law Reform (Miscellaneous Provisions) Act 1934 ...........................................................20, 21


**OTHER AUTHORITIES**

5 Arthur R. Miller, et al., *Federal Practice and Procedure* (3d ed. Oct. 2020
    update)...........................................................................................................................20, 23

Fed. R. Civ. P. 15 ..................................................................................................................26

Fed. R. Civ. P. 8 ....................................................................................................................23

Fed. R. Civ. P. 12 ...................................................................................................3, 19, 23, 26

Hague Evidence Convention - Acceptances of Accessions,
    https://assets.hcch.net/docs/f094fd72-6213-4950-96ea-955f41a311eb.pdf (last
    visited Dec. 11, 2020) ....................................................................................................12

# I.  **INTRODUCTION**

Anne and Jonathan Sacoolas are citizens of the United States and residents of this jurisdiction.  Last year, while stationed in the United Kingdom, Anne Sacoolas drove on the wrong side of the road and collided with 19-year old Harry Dunn, causing him catastrophic injuries that ultimately led to his death.  After hitting Harry head-on, Anne Sacoolas did not call an ambulance for Harry.  Instead, a passerby who came upon the scene called for assistance.

Anne Sacoolas assured the local police that she would cooperate in their investigation. Instead, she asserted diplomatic immunity and left the United Kingdom.  The Crown Prosecution Service of England and Wales charged Ms. Sacoolas with causing Harry's death by dangerous driving and sought her extradition.  Secretary of State Pompeo refused Britain's extradition request and Ms. Sacoolas to this day continues to refuse to return to the United Kingdom.

Harry's parents and twin brother have now brought this civil suit here in Defendants' home jurisdiction where Ms. Sacoolas resides and where there is no obstacle to her participation in person in the proceedings.

Defendants do not dispute that Anne Sacoolas's negligent driving was the proximate cause of Harry Dunn's death. Defendants also concede this suit is not barred by diplomatic immunity.

Although Ms. Sacoolas fled the United Kingdom and refuses to return, she now asks this Court to dismiss the family's suit under the doctrine of forum non conveniens, arguing her home jurisdiction (the Eastern District of Virginia) is an inconvenient forum and the case should be heard in the United Kingdom, where she refuses to return.  Ms. Sacoolas cannot have her cake and eat it too.

Defendants have not come close to meeting their burden on forum non conveniens: they have not satisfied the Fourth Circuit's requirement that a defendant must establish that the

relevant public and private interests "strongly favor" a specific, adequate, and available alternative forum.  The Eastern District of Virginia is plainly a convenient forum for Defendants, who live here, and the other relevant witnesses are willing to travel to this jurisdiction in person in order to participate in this proceeding.  Dismissal cannot be had on forum non conveniens grounds.

Defendants also move to dismiss some—but not all—of Plaintiffs' claims.  The parties agree that pursuant to Virginia choice of law rules, English law governs liability.[1]  Plaintiffs have alleged straightforward common law negligence claims against Anne Sacoolas, as well as a claim under the English Fatal Accidents Act, and they allege that Jonathan Sacoolas is vicariously liable.  Defendants have conceded that Anne Sacoolas was negligent and have not moved to dismiss the majority of the claims against her on any substantive grounds.  Rather, Defendants argue Plaintiffs should have specifically cited the Law Reform Act (the English survival statute) in their Complaint.  Plaintiffs disagree, but a simple technical amendment citing that statute by name can be filed, if the Court believes that is necessary.  Similarly, Defendants have not moved to dismiss the claims against Ms. Sacoolas under the Fatal Accidents Act and instead challenge only the scope of damages available under the statute. But the scope of available damages is immaterial to the question of whether a complaint states a claim upon which relief can be granted and is not a proper subject for a Rule 12 motion (and Defendants are wrong on the substance).  With regard to the one remaining disputed issue, Plaintiffs' Complaint states a claim for the vicarious liability of Defendant Jonathan Sacoolas.  Defendants' motion to dismiss should be denied in its entirety.

---

[1] Because Plaintiffs agree that English law governs their claims, Plaintiffs withdraw the four claims pleaded under Virginia law (Counts IV, V, VI, and IX).

## II. <u>LEGAL STANDARD</u>

Defendants have the burden to show the requirements for forum non conveniens dismissal are met. *SAS Inst., Inc. v. World Programming Ltd.*, 468 F. App'x 264, 265 (4th Cir. 2012) (unpublished); *Galustian v. Peter*, 591 F.3d 724, 732 (4th Cir. 2010); *In re XE Servs. Alien Tort Litig*., 665 F. Supp. 2d 569, 602 (E.D. Va. 2009) (Ellis, J.). The district court has discretion over motions to dismiss for forum non conveniens, but the Fourth Circuit will find an abuse of discretion if the district court did not hold the defendants to their burden of persuasion on all elements of the analysis. *Galustian*, 591 F.3d at 731; *accord DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 800 (4th Cir. 2013).

On a motion to dismiss under Rule 12(b)(6), a plaintiff's allegations are accepted as true and are construed in a light most favorable to the plaintiff. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015). A complaint survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the plaintiff's claim, not to "resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). If a court decides the complaint fails to state a claim under Rule 12(b)(6), it should generally grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. <u>FACTUAL ALLEGATIONS</u>

On the evening of August 27, 2019, after having dinner with her husband and children on the RAF Croughton United States Air Force base, Defendant Anne Sacoolas left to take her children home.  Compl., Dkt. 1, ¶14, ¶57.  She was driving a British Volvo SUV owned by her husband, Defendant Jonathan Sacoolas, that she had been using to run errands, shop, and transport her children during the several weeks she had been living in the United Kingdom.  Compl. ¶13.

On her way home, Ms. Sacoolas drove on the wrong side of the road.  Compl. ¶17.  At the same time, 19-year-old Harry Dunn was lawfully and properly driving his motorcycle on the correct side of the same road, in the opposite direction.  Compl. ¶¶15-16.  Ms. Sacoolas hit Harry head on, catapulting him off his motorcycle and into the front of her SUV where he violently struck her windshield before being thrown facedown to the side of the road.  Compl. ¶18, ¶20.

Harry suffered catastrophic and ultimately fatal injuries in the accident, including extensive pelvic and abdominal injuries, fractures in each of his limbs, multiple open fractures in which bones protruded from his body, and significant degloving injuries.  Compl. ¶19.  Remarkably, Harry, who had been wearing a helmet, suffered only a mild head injury.  Compl. ¶16, ¶20.  This meant that he remained conscious during and after the accident, leaving him aware that he was badly hurt and dying, facedown on the side of the road, alone and in pain.  Compl. ¶20.

Ms. Sacoolas admitted that she caused the accident by driving on the wrong side of the road.  Compl. ¶37.  But she did not take responsibility at the scene by acting in a manner consistent with the moral and legal obligations imposed on her as a result of her conduct.  Despite having a mobile phone, Ms. Sacoolas did not call the police to report the accident or for an ambulance for Harry.  Compl. ¶¶21-23.

Harry was conscious, breathing with difficulty, in excruciating pain, and able to speak when paramedics arrived.  Compl. ¶26, 31.  He told the paramedics that Ms. Sacoolas caused the accident by driving on the wrong side of the road.  Compl. ¶27.  The evidence at the scene showed that the Sacoolas SUV, which had Harry's blood and clothing embedded in the front windshield, was sitting on the wrong side of the road.  Compl. ¶18, ¶29.

Harry's father, Plaintiff Tim Dunn, arrived at the scene after the accident and watched as the first responders treated Harry's injuries and worked to save his life.  Compl. ¶28, ¶30.  Mr. Dunn has vivid recollection of seeing his son's extensive injuries, with bones sticking out all over his body, and observing that his son was awake, aware, anxious, and scared.  Compl. ¶30.  Mr. Dunn tried to comfort his son, but every single breath Harry took to stay alive caused him excruciating pain.  Compl. ¶30.  Harry was not sedated for well over an hour after the accident.  Compl. ¶32.  Despite extraordinary measures by the first Responders, Harry died at the hospital.  Compl. ¶ 34.

As can be expected, Harry's death has had a devastating impact on his family.  Compl. ¶¶ 35-36, 43, 45-46.  Harry's father has been traumatized by the sudden and unexpected shock of seeing his son's extreme pain and suffering in the aftermath of the accident.  Compl. ¶35.  The suffering of Harry's family has been compounded by the actions Ms. Sacoolas took after the accident.  After Ms. Sacoolas promised to aid the British police in their investigation of the accident, prompting them to release her to return to the home she had been headed to at the time of the accident, she left the United Kingdom without notifying the police and asserted diplomatic immunity.  Compl. ¶38.  The Crown Prosecution Service of England and Wales charged Ms. Sacoolas with causing Harry's death by dangerous driving, and the United Kingdom attempted, unsuccessfully, to have Ms. Sacoolas extradited from the United States. Compl. ¶¶ 39- 40.

Harry's parents have, therefore, brought suit in the Eastern District of Virginia where Ms. Sacoolas resides.  Compl. ¶9.  Ms. Sacoolas is not immune from civil suit in the United States. Compl. ¶41.

## IV.  ARGUMENT

## A.  PLAINTIFFS' ACTION PROPERLY BELONGS IN THIS COURT

The Sacoolases present a cursory and inadequately supported argument in support of forum non conveniens dismissal that does not come close to meeting their heavy burden.  Defs.' Mem. in Supp. of Mot. to Dismiss, Dkt. 14-1, at 3-5.  "A party seeking dismissal on grounds of forum non conveniens 'ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.'" *SAS Inst., Inc.*, 468 F. App'x at 265 (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)); *see also Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984) (the question to be decided is whether "defendants met their burden of showing not only that Maryland was not the best forum, but that a particular other forum was *more appropriate*").

To meet their burden, defendants must first identify a specific alternative forum that is available and adequate. *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 246 (4th Cir. 2011).  Second, defendants must convince the court the "relevant public and private interests *strongly favor*" litigation in the alternative forum. *DiFederico*, 714 F.3d at 802 (emphasis in original) (quoting *Tang*, 656 F.3d at 246); *see also, e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

While the deference owed to the plaintiff's choice of forum is highest when the case is brought in the plaintiff's home forum, a defendant seeking dismissal for forum non conveniens

bears a similarly high burden when the case is brought in the defendant's home forum. *See Galustian*, 591 F.3d at 732  (noting defendant was "a resident and citizen of the forum he seeks to have declared inconvenient"); *see also,* e.g., *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46–47 (2d Cir. 1996) ("[T]he court starts with a presumption in favor of the plaintiff's choice of forum, especially if the defendant resides in the chosen forum, as here."); *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 45–46 (3d Cir. 1988) ("[D]ismissal for forum non conveniens is the exception rather than the rule.").

Nor do bare allegations of inconvenience suffice; a defendant must "produce at least some evidence demonstrating that its interests would be unduly affected by the challenged litigation." *SAS Inst.*, 468 F. App'x at 266-67.

1.     The Sacoolases Do Not Meet Their Heavy Burden to Show Forum Non Conveniens Dismissal is Appropriate as Required by the Fourth Circuit

As an initial matter, the Sacoolases fail to identify any specific alternative forum where this case might be brought.  While they generally argue it should be brought in England, they fail to identify a specific court, as Fourth Circuit caselaw squarely requires.  *See Kontoulas*, 745 F.2d at 316 (letter showing that defendant would "consent to personal jurisdiction in Australia," without identifying any specific court in Australia where the case could be brought, is insufficient for forum non conveniens dismissal); *see also Millennium Inorganic Chemicals Ltd. v. Nat'l Union Fire Ins. Co.*, 686 F. Supp. 2d 588, 562 (D. Md. 2010) ("[E]ven if it were clear that some Australian court would likely take jurisdiction over such a matter, defendants failed to meet the Fourth Circuit's clear requirement that they indicate which *court* provides the alternative forum, not just which country." (emphasis in original)).

It is far from obvious how the jurisdiction and venue analysis would proceed if Plaintiffs filed this complaint in England.  The Sacoolases explicitly state that they would not return to

testify in Plaintiffs' civil suit, were it brought there. Defs.' Mem. at 6 ("Neither Anne Sacoolas nor Jonathan Sacoolas will agree to return to England for depositions or trial . . . ."). Attempting to have it both ways, the Sacoolases have authorized counsel in London to accept service on their behalf. But the Sacoolases do not provide any authority or analysis showing that, under English law, service on an absent foreign defendant's counsel establishes personal jurisdiction over the defendant. *Cf. Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (finding Saudi forum was available where defendant consented to Saudi jurisdiction *and* submitted a Saudi law expert's declaration showing "Saudi law recognizes consents to jurisdiction"). The Sacoolases thus fail to carry their burden to show England is an available forum. *See Galustian*, 591 F.3d at 731 ("[T]he defendant has the burden to 'provide enough information to the District Court' to demonstrate that the alternative forum is both available and adequate" (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 258 (1981))).

But even assuming service on London counsel would give *some* English court personal jurisdiction over the Sacoolases, the Sacoolases do not demonstrate that it would give a proper and convenient English court personal jurisdiction over this case. It is the Sacoolases' burden to resolve these issues. *See Galustian*, 591 F.3d at 731. They have not attempted to do so.

The Sacoolases alternatively suggest that, regardless of whether *they* could be sued in any proper English forum, England still provides an available and adequate forum because a European Union "directive" provides a cause of action against the Sacoolas's English insurer. But of course, as the Sacoolases concede, Britain is no longer a member of the European Union. Defs.' Mem. at 5, n.4. The EU Fourth Motor Insurance Directive is due to expire on December 31, 2020 – just two weeks from today. Ex. 1, Decl. of C. Foster ¶32-33. The Sacoolases concede they cannot confirm that an English court could sustain a direct action against their

insurer in 2021 and beyond, regardless of whether the insurer agrees to accept service. Defs.'
Mem. at 5, n.4 (conceding "there is significant uncertainty surrounding whether this direct cause
of action will persist"); *see also* Ex. 1, Foster Decl. at ¶33 (it is "uncertain, however, whether
these provisions will remain in force after the UK's departure from the European Union on 31
December 2020"). This conceded uncertainty does not satisfy the Fourth Circuit's requirements.
*Galustian*, 591 F.3d at 731.

Additionally, a forum is only "adequate when ' . . . all parties can come within [the]
forum's jurisdiction.'" *Tang*, 656 F.3d at 249 (quoting *Fid. Bank PLC v. N. Fox Shipping N.V.*,
242 F. App'x 84, 90 (4th Cir.2007)). A direct action against the Sacoolases' insurer (if even
possible after Brexit) does not bring the Sacoolases themselves within the jurisdiction of an
English court. *See Williams v. Wilson*, No. 05-C-227, 2005 WL 2100980, at *2 (W.D. Wis. Aug.
30, 2005) ("Whether or not plaintiff can pursue a claim against someone else is not the issue the
court must determine when it decides forum non conveniens. In this context the court must
determine whether or not an alternative forum exists that can address plaintiff's claim against
defendant."). Plaintiffs chose to sue the Sacoolases because of the tremendous pain the
Sacoolases—not their insurer—have caused them, and as Plaintiffs' expert explains, a suit
against the insurer alone would not be consistent with practice in English courts. *See* Ex. 1,
Foster Decl. ¶ 34 ("[I]t would be unusual for any English Barrister to advise a client" to forgo
suing the tortfeasor and to sue only the insurer).

Finally, "the adequacy of the alternate forum depends on whether there are some assets of
the defendant in the alternate forum." *Figueiredo Ferraz E Engenharia de Projeto Ltda. v.
Republic of Peru*, 665 F.3d 384, 391 (2d Cir. 2011). The Sacoolases no longer have a presence
in the United Kingdom and have not demonstrated that they have assets in the United Kingdom

which could satisfy a judgment against them.  The ability to enforce a judgment is an "important consideration" and weighs against forum non conveniens dismissal here. *Gulf Oil*, 330 U.S. at 508 ("There may also be questions as to the enforceability of a judgment if one is obtained.").

In sum, the Sacoolases have not met their burden to identify a specific alternative forum, as the Fourth Circuit expressly requires: they have not shown that an English forum is available to hear this case or could assert personal jurisdiction over them; the purported direct action against their insurer is both illusory and an inadequate substitute for an action against the Sacoolases; and they have not shown they have assets in England sufficient to satisfy a judgment.

2.    The Sacoolases Have Not Met Their Heavy Burden to Show the Private and Public Interest Factors Weigh Strongly in Favor of an English Forum

The Sacoolases argue, without any evidentiary support, that "England is the more convenient forum," Defs.' Mem. at 6, but they do not even attempt to show that the private and public interest factors "*strongly favor*" litigation in England, as the Supreme Court and the Fourth Circuit require.  *DiFederico*, 714 F.3d at 802.  Scrutiny of the private and public interest factors shows the Sacoolases cannot show that trial in this Court, their home forum, would be "oppressive[]" or "vexatio[us]."  *Sinochem Int'l*, 549 U.S. at 429.[2]

---

[2] The relevant private interest factors include:

(1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*DiFederico*, 714 F.3d at 804 n.6 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994)).  The relevant public interest factors include:

(1) Administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; and (3) the interest in having the

a.      Private Interest Factors

The Sacoolases focus their private interest factor arguments on the availability of witnesses.  But they fail to identify ***any*** witness who will be unavailable for trial in this Court.

First, courts have consistently declined to find that the presence of witnesses abroad favors dismissal unless the defendant identifies the witnesses abroad, shows that they will not participate unless compelled, and explains the expected content and necessity of their testimony. *See, e.g.*, *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1231 (9th Cir. 2011); *Morehead v. Barksdale*, 263 F.2d 117, 119 (4th Cir. 1959); *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, No. 3:09-CV-78, 2010 WL 2757351, at *7 (W.D. Va. July 13, 2010); *Millennium Inorganic*, 686 F. Supp. 2d at 563.  The Sacoolases have made none of the requisite showings.

Second, the only relevant third-party witness either party has identified has signed a declaration swearing that he will voluntarily participate in this case, even if it requires travel to the United States.  Ex. 2, Decl. of B. Taylor ¶8. The Sacoolases concede that Anne Sacoolas proximately caused Harry's death through negligent driving.  As a result, the trial will focus on Harry's pain and suffering as he lay on the road.  Firefighter Brian Taylor, who was one of the first emergency responders on the scene and who remained until Harry was taken to the hospital, will testify about Harry's injuries and his visible pain while lying awake and aware at the collision site.  *Id.*  ¶¶5, 7-8. Plaintiff Tim Dunn, who saw Harry at the collision site, will provide

---

trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or in application of foreign law; (5) and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).

additional testimony about Harry's condition.  Ex. 3 Decl. of T. Dunn.[3]  The Sacoolases have not suggested that there are additional third-party witnesses who will provide noncumulative testimony.  *Sund v. Marriott Int'l, Inc.*, No. 19-cv-2806, 2020 WL 2085469, at *6 (D. Md. Apr. 30, 2020) ("Marriott has not shown that these witnesses are indispensable to its case.").

Third, even assuming the Sacoolases could identify witnesses in England who are unwilling to testify voluntarily, English witnesses are not beyond compulsory process, as the parties can utilize the Hague Convention on Taking Evidence Abroad in Civil or Commercial Matters.[4]  Courts routinely find that witnesses in Hague Convention states are available. *See MicroAire*, 2010 WL 2757351, at *7; *Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*, 940 F. Supp. 554, 564 (S.D.N.Y. 1996).

Fourth, the Sacoolases themselves are witnesses who may be unavailable if this case is tried in England.  Anne Sacoolas, of course, was present during and immediately after the collision.  The Sacoolases are likely the only witnesses to Jonathan Sacoolas's vicarious liability.  And unlike the Sacoolases' unidentified English witnesses, the Sacoolases have been clear ***they will not travel to England*** to participate in a trial there.

The Sacoolases attempt to evade this fact by stating they can participate remotely.  But they again fail to carry their burden to show this will suffice.  English courts generally do not allow remote testimony, absent extraordinary circumstances, and some courts during the Covid-19 pandemic have postponed proceedings in lieu of remote testimony.  Ex. 1, Foster Decl. ¶37.

---

[3] The other Plaintiffs have likewise signed declarations swearing to their willingness to travel to the United States for trial. Ex. 4, Decl. of C. Charles; Ex. 5, Decl. of N. Dunn.

[4] The Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 847 U.N.T.S. 231; *see also* Hague Evidence Convention - Acceptances of Accessions, https://assets.hcch.net/docs/f094fd72-6213-4950-96ea-955f41a311eb.pdf (last visited Dec. 11, 2020).

The Sacoolases provide no evidence, expert testimony, or legal analysis suggesting an English court would allow them to testify remotely—especially if Covid-related concerns abate by the time this case would go to trial in England.  *Id.* ¶¶35-37 (testifying English courts generally permit video-link testimony only "where a witness is unavoidably not able to attend Court").  And even if the Sacoolases do testify via remote means or prerecorded deposition, these devices "are not a substitute for live testimony."  *Int'l Masonry Training & Educ. Found. v. Haw. Masons' Training Fund*, No. 8:18-cv-3320, 2019 WL 1492684, at *3 (D. Md. Apr. 3, 2019); *see also, e.g.*, *Macronix Int'l Co. v. Spansion Inc.*, No. 3:13-cv-679, 2014 WL 934521, at *3 (E.D. Va. Mar. 10, 2014) (noting courts' "substantial preference for in person testimony").  By proceeding in England while refusing to present live, in-person testimony, the Sacoolases would add extra administrative burdens on the English court and could harm Plaintiffs' ability to present their case.  This factor thus strongly weighs in favor of a Virginia forum.

The Sacoolases also ignore "questions as to the enforceability of a judgment if one is obtained."  *Gulf Oil*, 330 U.S. at 508.  As discussed above, the Sacoolases are likely judgment-proof in the United Kingdom.  Even if an American court would enforce an English judgment against the Sacoolases, Plaintiffs would face added burden and expense trying to obtain a judgment in one country only to enforce it in another.  *See Carijano*, 643 F.3d at 1231-32 (reversing forum non conveniens dismissal because district court did not consider the difficulty of enforcing a foreign judgment in the United States).

The Sacoolases rightfully make no argument on the remaining private interest factors.  The Sacoolases have identified no relevant costs.  There will likely only be a small amount of documentary evidence at issue, which can be easily transmitted electronically or by mail.  And

because the Sacoolases concede Anne Sacoolas's liability for the collision, there will be no need to visit the collision site.

In sum, the Sacoolases fall well short of showing private interest factors weigh strongly in favor of an English forum. To the contrary, the private interest factors weigh in favor of a Virginia forum. Firefighter Taylor is willing to travel to the Eastern District of Virginia, while the Sacoolases have made clear they would not testify in England, and Plaintiffs may experience added difficulty enforcing an English judgment.

       b.      Public Interest Factors

The public interest factors also favor a Virginia forum.  The Sacoolases argue England is the only jurisdiction with an interest in this case and that this Court will have to apply English law.  But they ignore the strong countervailing interests that favor a Virginia forum, including the United Kingdom's support for Plaintiffs' choice of forum.  And while Plaintiffs agree English law will govern issues of liability, this Court should have little difficulty applying it. The claims in this case are straightforward common law negligence claims and damage claims under a Fatal Accidents statute.  Moreover, because Anne Sacoolas conceded that her negligence proximately caused Harry Dunn's death, there will be few legal disputes remaining after this motion is decided that will require application of English law at all.

Plaintiffs agree the United Kingdom has an interest in this controversy, but the United Kingdom's interest does not favor local adjudication in England.  Confirming that the United Kingdom's interest favors a Virginia forum, the government of the United Kingdom has expressed support for the Plaintiffs' decision to litigate in this Court in a letter directly to the Plaintiffs.  Ex. 6, Letter from the RT Hon Dominic Raab MP, Secretary of State for Foreign, Commonwealth and Development Affairs to Charlotte Charles & Tim Dunn (Dec. 10, 2020) ("I strongly support your right to bring this case . . . . the British Government takes the view that

British citizens can bring their case in whichever court they think appropriate. The defendant has said she will not appear if the case is brought in the UK courts. I fully understand therefore your wish to pursue the case in the United States, and have confidence in the US court's ability to hear the case…").  The United Kingdom's primary interest in this litigation is ensuring justice for Plaintiffs.  The United Kingdom agrees that under the unusual circumstances of this case, its interests will be served in a Virginia forum.

Anne Sacoolas already left the United Kingdom to avoid potential criminal prosecution and refused to return or waive diplomatic immunity to prosecution.  Now, after preventing a criminal trial from proceeding locally in the United Kingdom, Anne Sacoolas argues it would be oppressive and vexatious to have a civil claim heard anywhere *except* the United Kingdom. Whatever interest the United Kingdom may have had in a local trial is overridden by its interest in protecting its judicial system from this sort of manipulation.

The Sacoolases additionally ignore Virginia's and the United States' strong interest in having this controversy heard in Virginia.  States generally have an interest in regulating and punishing the conduct of their citizens, even when they harm someone abroad.  *See, e.g.*, *Behrens v. Arconic, Inc.*, ---F. Supp. 3d ---, 2020 WL 5542387, at *36 (E.D. Pa. Sept. 16, 2020); *Wright v. Old Gringo Inc.*, No. 17-cv-1996, 2019 WL 2436779, at *6 (S.D. Cal. June 11, 2019) ("California is not some distant forum with a remote interest. California plainly has an interest in the conduct of its residents . . . ."); *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 303-04 (S.D.N.Y. 2018), *aff'd*, 785 F. App'x 18 (2d Cir. 2019); *Warn v. M/Y Maridome*, 961 F. Supp. 1357, 1372 (S.D. Cal. 1997), *aff'd*, 169 F.3d 625 (9th Cir. 1999).  This is true even when foreign law applies; as one court explained when a UK plaintiff sued an American defendant for violation of UK law:

> Although plaintiff has not alleged the violation of any laws of this country by
> defendant, this Court is not bereft of interest in this case. . . . An unwillingness by
> this Court to hear a complaint against its own citizens with regard to a violation of
> foreign law will engender, it would seem, a similar unwillingness on the part of a
> foreign jurisdiction when the question arises concerning a violation of our laws by
> one of its citizens who has since left our jurisdiction. This Court's interest in
> adjudicating the controversy in this case may be indirect, but its importance is not
> thereby diminished.

*London Film Prods. Ltd. v. Intercontinental Commc'ns, Inc.*, 580 F. Supp. 47, 49 (S.D.N.Y.

1984).

Moreover, Virginia and the United States have an especially strong interest here given the

circumstances of this dispute and the identity of the Defendants.  The Sacoolases are not private

and anonymous Virginia citizens whose tortious conduct harmed someone abroad.  They were in

the UK as diplomatic representatives of the United States.  Their departure from the United

Kingdom and the resulting lack of accountability sparked considerable controversy in the U.S.

media.  *E.g.* Ex. 7, Louis Casiano, *Trump Vows to Get Involved in Case of Diplomat's Wife

Suspected in Fatal Crash*, Fox News (Oct. 9, 2019); Ex. 8, Barbie Latza Nadeau, *After Killing

Teen in U.K., Runaway Wife of U.S. 'Spy' Provokes Diplomatic Crisis*, The Daily Beast (Oct. 8,

2019); Ex. 9, Katie Rogers, *Trump Stuns Grieving Britons: Meet the Suspect in Your Son's

Death*, N.Y. Times (Oct. 16, 2019); Ex. 10, Alexander Smith, *Harry Dunn's Family Rejects

Trump's 'Bombshell' Offer to Meet Anne Sacoolas*, NBC News (Oct. 16, 2019).  Many

Americans have expressed great concern about how the Sacoolases' conduct has reflected on the

United States and how it has impacted the United States' standing abroad.  *E.g.* Ex. 11,

*Editorial: Diplomat's Wife Needs to Do the Right Thing and Return to Great Britain*, Aiken

Standard (Oct. 15, 2019); Ex. 12, Jen Kirby, *The Death of a British Teen Has Put a Strain on the

US-UK Relationship*, Vox (Oct. 16, 2019); Ex. 13, Nick Royle, Letter to the Editor, *Anne

Sacoolas Needs to Face Justice for the Death of Harry Dunn*, Wash. Post (Oct. 13, 2019).

16

Virginia and the United States accordingly have a substantial interest in ensuring the Sacoolases are held to account for the harm they have caused to the Plaintiffs.  And for these same reasons, this case would not unfairly burden a Virginia jury.  *See DiFederico*, 714 F.3d at 808.

Otherwise, the Sacoolases argue an English forum is favorable because of the administrative difficulties applying English law will pose to this Court. Plaintiffs agree English law will govern the Sacoolases' liability.  But there will be little law to apply, as the Sacoolases have conceded the core liability question.  The remaining disputes center around common-law tort principles, which are familiar to this Court as our two countries share common-law legal traditions. *See Penge v. Hillenbrand Indus., Inc.*, 228 F. Supp. 2d 929, 937 (S.D. Ind. 2002) (predicting "little if any difficulty applying English law" on product liability); *Ship Const. & Funding Servs. (USA), Inc. v. Star Cruises PLC*, 174 F. Supp. 2d 1320, 1325 (S.D. Fla. 2001) ("Even if English law were to apply to the remaining counts, that would not justify dismissal of this action."); *Ferruzzi Italia, S.p.A. v. Trade & Transp., Inc.*, 683 F. Supp. 131, 136 (D. Md. 1988) ("Assuming that defendants are correct that the parties made an implicit choice of English law, this fact alone does not justify dismissal of this action in favor an English forum.  Here, the legal issues presented are straightforward and require no 'untangling' of complexities." (citations omitted)).  And the source material will all be in English.

Even if the application of English law posed a more daunting task, the need to apply foreign law is never enough on its own to favor forum non conveniens dismissal.  *See Piper Aircraft*, 454 U.S. at 260 n.29 (holding need to apply foreign law "alone is not sufficient to warrant dismissal"); *DiFederico*, 714 F.3d at 807-808 (holding district court erred in finding difficulty in applying Pakistani law favored dismissal); *see also, e.g.*, *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir. 1998) ("While reluctance to

apply foreign law is a valid factor favoring dismissal under *Gilbert*, standing alone it does not justify dismissal."). The Fourth Circuit has been particularly emphatic that courts should not give great weight to the need to apply foreign law in the forum non conveniens analysis. In *DiFederico*, the district court based its forum non conveniens dismissal in part on the district court's reluctance to apply Pakistani law. Reversing, the Fourth Circuit observed that "'[f]ederal courts are quite capable of applying foreign law when required to do so'" and that reviewing and interpreting Pakistani legal sources "is precisely the kind of work American judges perform on a daily basis." *DiFederico*, 714 F.3d at 807-08 (quoting *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 345 (8th Cir. 1983)). Accordingly, the application of English common-law tort principles does not weigh in favor of forum non conveniens dismissal here.[5]

In sum, Virginia and the United States (and thus a Virginia jury) have a strong interest in this case, while the United Kingdom has yielded its interest in favor of Plaintiffs' choice of forum. English law will apply to the merits, but the administrative burden will be de minimis. On balance, the public convenience factors accordingly weigh strongly in favor of a Virginia forum. Because the private interest factors also support a Virginia forum, dismissal is inappropriate.

---

[5] The final public interest factor is the relative congestion of the competing fora. The Sacoolases have made no argument on this factor, nor submitted any evidence of congestion levels in any potential English forum. They accordingly cannot carry their burden to show this factor favors dismissal. *See ElcomSoft, Ltd. v. Passcovery Co.*, 958 F. Supp. 2d 616, 621 (E.D. Va. 2013) ("[T]here is no evidence comparing docket conditions in Russia with those in this district. Therefore, the factor of court congestion is neutral."); *Tellez v. Madrigal*, 223 F. Supp. 3d 626, 642 (W.D. Tex. 2016) ("Vergara offers no information that would enable the Court to make an intelligent appraisal of whether its docket is more or less congested than Mexican court dockets. Thus, the first public-interest factor counsels against dismissal." (citation omitted)).

**B.     PLAINTIFFS' CLAIMS SATISFY THE PLEADING STANDARD OF RULE 12(b)(6)**

The Scaoolases alternatively move to partially dismiss some of Plaintiffs' claims for failure to state a claim under Rule 12(b)(6).  The substance of the Sacoolases' Rule 12(b)(6) argument amounts to a narrow challenge.  The Sacoolases concede Anne Sacoolas's negligence proximately caused Harry's death.  They additionally acknowledge that the Estate has survival claims for negligence and breach of duty against Ms. Sacoolas (Counts I and III), although they quibble with the technicalities of how Plaintiffs pleaded these claims.  They also concede the individual Plaintiffs have wrongful death claims under English law against Ms. Sacoolas and thus limit their challenge on Count VII to the categories of damages Plaintiffs can claim.  The Sacoolases do not challenge Count X on any grounds.

For their part, Plaintiffs agree with the Sacoolases that English substantive law governs liability and thus withdraw Counts IV, V, VI, and IX, which were pleaded solely under Virginia law.  This leaves only one substantive merits dispute: whether Plaintiffs have stated a claim against Jonathan Sacoolas based on his vicarious liability (Counts II, VIII, and XI).

1.     Choice of Law

Federal courts exercising diversity jurisdiction apply the choice of law rules of the state in which they sit.  *See Corinthian Mortgage Corp v. ChoicePoint Precision Mktg., LLC*, No. 1:07CV832 (JCC), 2008 WL 11374386, at *3 (E.D. Va. Apr. 4, 2008).  Under Virginia law, "questions of substantive law are governed by the law of the place of the transaction or the place where the right is acquired (*lex loci*), while questions of procedure and remedy are governed by the law of the place where the action is brought (*lex fori*)." *Spring v. United States*, 833 F. Supp. 575, 578 (E.D. Va. 1993) (Ellis, J.); *see also Frye v. Commonwealth*, 231 Va. 370, 376, 345 S.E.2d 267, 272 (1986); *McMillan v. McMillan*, 219 Va. 1127, 1128, 253 S.E.2d 662, 663

(1979); *Baise v. Warren*, 158 Va. 505, 508, 164 S.E. 655, 656 (1932) ("The broad, uncontroverted rule is that the *lex loci* will govern as to all matters going to the basis of the right of action itself, while the *lex fori* controls all that is connected merely with the remedy." (quoting R.C.L., volume 5, page 917)).  Thus, Plaintiffs agree that questions of substantive law in this action will be governed by English law—the place where Harry was killed and Plaintiffs' causes of action arose, but that questions of procedure and remedy are governed by the rules of the Eastern District of Virginia.

  2. As the Sacoolases acknowledge, Plaintiffs have stated claims preserved by the Law Reform (Miscellaneous Provision) Act 1934.

  The Law Reform (Miscellaneous Provisions) Act 1934 (UK) is a survival statute that preserves the causes of action that were subsisting or vesting in the deceased at the time of his death.  Ex. 1, Foster Decl. ¶¶ 10(i), 16.  The Sacoolases concede that the Estate has stated cognizable claims that survived Harry's death under the Law Reform (Miscellaneous Provision) Act 1934, 14 Geo. 5 c. 41, § 1.  *See* Defs.' Mem. at 13.  The Sacoolases nevertheless move to dismiss these claims because Plaintiffs did not specifically mention the Law Reform Act by name in the Complaint.  This is not grounds for dismissal.

  "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014); *see also, e.g.*, *King v. Rubenstein*, 825 F.3d 206, 222 (4th Cir. 2016) ("Simply because King did not specifically label a claim under a due process heading does not mean that he did not raise one."); 5 Arthur R. Miller, et al., *Federal Practice and Procedure* § 1219 (3d ed. Oct. 2020 update) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for

the plaintiff's claim for relief."). Courts have thus consistently held survival actions do not need to be specifically pleaded as such. *See McDonald v. Suggs*, No. 5:07-cv-339, 2008 WL 2129860, at *6 (E.D.N.C. May 20, 2008) (reading complaint as a whole and concluding it stated survival action distinct from wrongful death action); *Gallick v. United States*, 542 F. Supp. 188, 190 (M.D. Pa. 1982) (holding plaintiffs did not need to specifically delineate survival and wrongful death claims because "such technical exactness is not necessary under federal rules of pleading"); *Kleinschmidt v. Universal Seafood Co.*, 201 F. Supp. 96, 99 (E.D. Pa. 1961) (finding it sufficient that plaintiff brought claim in her capacity as administratrix to state survival claim); *cf. Mang v. City of Greenbelt*, No. 11-cv-1891, 2012 WL 115454, at *8 (D. Md. Jan. 13, 2012) ("[A] 'survival action' is merely the mechanism by which an estate brings a claim that the decedent could have asserted had he survived. It is not a 'claim' in the sense that, for example, one might assert a battery or negligence claim."). The Sacoolases do not dispute that Counts I and III adequately plead substantive tort claims.[6] Plaintiffs' Complaint need not detail the legal theory through which the Estate can assert these claims. Regardless, the Sacoolases' brief makes it plain that they were on notice Plaintiffs assert a survival claim under the Law Reform Act.

As Counts I, II, and III state cognizable tort claims that survived Harry's death under the Law Reform Act, Plaintiffs respectfully request the Court deny Defendants' motion to dismiss these counts. *See* Ex. 1, Foster Decl. ¶ 13. In the event the Court agrees with the Sacoolases that Plaintiffs should have mentioned the Law Reform Act by name, Plaintiffs alternatively request the Court amend the Complaint by interlineation to reference Law Reform Act by name. *See*

---

[6] Additionally, although Jonathan Sacoolas disputes his vicarious liability under Count II, he does not alternatively dispute that the Estate could bring a survival action under the Law Reform Act if he were vicariously liable.

*Level at 401 LP v. First Co.*, E.D.N.C. No. 5:20-CV-00085-M, 2020 WL 4085226, at *2 n.2 (E.D.N.C. July 20, 2020) (amending complaint by interlineation).

      3.      Plaintiffs can Recover Intangible Damages under the Fatal Accidents Act 1976.

      Defendants seek to limit Plaintiffs' damages to the recovery of funeral expenses under their claims for violation of the Fatal Accidents Act 1976,[7] which provides a remedy for statutorily defined "dependents" to recover damages after the death of a family member.  *See* Fatal Accidents Act 1976 c. 30, §1; Ex. 1, Foster Decl. ¶10(i).  Defendants admit that Harry's mother, father, and brother are "dependants" under the Act and are entitled to bring a claim for Harry's death.  Defs.' Mem. at 16.  While Defendants are correct that Plaintiffs are not entitled to recover bereavement damages because Harry was no longer a minor at the time of his death, *see* Fatal Accidents Act 1976 c. 30, §1A, Plaintiffs are entitled to collect damages for the loss of approximately six decades worth of intangible benefits Harry would have bestowed his family members.  Ex. 1, Foster Decl. ¶¶17-21; *see also, e.g.*, *CC v. TD*, [2018] EWHC 1240 (QB), HQ17P00106 [57] ("I am satisfied that the line of cases starting with Hay in 1975 permit the Court to make an award for loss of *intangible benefits* where children have been denied the benefit of love and affection which their father would otherwise have bestowed upon them. Experience suggests that such awards are commonplace."); *Beesley v. New Century Grp. Ltd.*, [2008] EWHC 3033 (QB), HQ 08X02073 [83] ("[T]he principle of making awards for loss of intangible benefits is now well established."); *AB v KL*, [2019] EWHC 611 (QB), [6] [2020] P.I.Q.R. Q21 (holding dependents were entitled to be compensated for "intangible benefits . . .

---

[7] Plaintiffs respond only in opposition to Defendants' arguments to limit the damages available under their Fatal Accidents Act claims because they have withdrawn Counts V and VI. *See supra* at p. 20.

over and above commercially replaceable services": in other words, "services only a father could provide").

The Sacoolases concede Plaintiffs could potentially collect damages for lost future income or services from Harry. Defs.' Mem. at 16-17. But they nevertheless argue the Complaint does not include allegations detailing these potential damages. This argument is improper on a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615, 624 & n.7 (E.D. Va. 2013) (holding complaint need only request relief "in general terms" to satisfy Rule 8(a)(3)'s pleading requirements and, regardless, failure to satisfy Rule 8(a)(3) is not grounds for Rule 12(b)(6) dismissal); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014) ("[T]he nature of the relief sought is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted."); 5 *Federal Practice & Procedure* § 1255 (3d ed. Oct. 2020 update) (discussing federal courts' power "to award relief on the basis of the evidence adduced at trial rather than on the basis of the formal allegations in the pleading").[8] Plaintiffs alternatively request to amend to add details about the services and intangible benefits Harry would have provided his family if his life was not cut short. Accordingly, the Court must deny Defendants' motion to limit Plaintiffs' damages under the Fatal Accidents Act to only funeral expenses.

---

[8] It makes no difference that the Sacoolases in the conclusion of their memorandum appear to style their Fatal Accidents Act argument as a motion to strike. Defs.' Mem. at 19. A request for a specific remedy cannot be struck under Rule 12(f). *See Bocock v. Specialized Youth Servs. of Va., Inc.*, No. 5:15-cv-50, 2015 WL 1611387, at *3 (W.D. Va. Apr. 10, 2015).

4.      The Complaint States Plausible Claims for the Vicarious Liability of Jonathan
        Sacoolas

In Counts II, VIII, and XI[9] of their Complaint, Plaintiffs allege Defendant Jonathan

Sacoolas is vicariously liable for the actions of his wife in driving on the wrong side of the road

and killing Harry.  In support of their vicarious liability theory, Plaintiffs allege that Mr.

Sacoolas owned the Volvo SUV, in whole or in part, and that at the time of the accident Ms.

Sacoolas was using the SUV to transport the children from dinner with their father to the family

home.  Compl. ¶¶13-14, 56-57).  Defendants move to dismiss all counts against Mr. Sacoolas

under the argument that Plaintiffs have failed to allege a plausible claim for vicarious liability

under English law, which they claim requires a direct delegation that creates an agency

relationship and contend is not possible between a husband and wife in relation to activities

carried out with regard to their children.  Defs.' Mem. at 9-11.  The Court must deny

Defendants' motion because Plaintiffs have made allegations sufficient to plausibly plead such

claims.

Similar to the general law in the United States, under English law an agency relationship

makes the principal vicariously liable for the actions of the agent.  Ex. 1, Foster Decl. ¶22; *see*

*also Launchbury v. Morgans*, [1972] R.T.R. 406 (HL).  "[I]n order to fix vicarious liability upon

the owner of a car . . . it must be shown that the driver was using it for the owner's purposes,

under delegation of a task or duty."  *Launchbury*, [1972] R.T.R. at 409.  A spousal relationship

does not automatically create vicarious liability.  *Id*.  But such a relationship is created when one

spouse delegates a task or duty to the other, who then uses the vehicle for that purpose.  Ex. 1,

Foster Decl. ¶27; *see also Norwood v Navan*, [1981] R.T.R. 457, 462.  *Launchbury* and *Norwood*

---

[9] Plaintiffs respond only in opposition to Defendants' arguments in favor of dismissing
Counts II, VIII, and XI because they have withdrawn Counts IV and VI.  *See supra* at p. 20.

do not stand for the proposition that there can be no vicarious liability by one spouse for the actions of another.  Those cases merely require that rather than attempting to divine from the facts whether there was an agency relationship created between the spouses, there be a clear delegation of responsibility from one spouse to the other.  *See Norwood*, [1981] R.T.R. at 462-63 (citing *Launchbury*).

Here, Plaintiffs have alleged that at the time of the accident Ms. Sacoolas was driving her children home after having dinner with her husband on the military base.  Viewing the complaint in the light most favorable to Plaintiffs, a fair reading of the Complaint is that Ms. Sacoolas drove her children to and from the military base to have dinner with their father *at his direction*.

A "complaint should not be dismissed for failure to state a claim 'unless . . . it appears **certain** that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'"  *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (emphasis added) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)).  It is certainly plausible that Mr. Sacoolas did request his wife to take their children to see him for dinner and then return them home in his SUV, and that she acted in compliance with his request, satisfying the standard in *Launchbury*.  Ex. 1 Foster Decl. ¶29.  If the facts as obtained through discovery do not bear that out, Defendants will be entitled to summary judgment on the vicarious liability counts.  But the Court should not dismiss these claims at the outset of the litigation, particularly when the communications between Mr. and Ms. Sacoolas about their family's dinner arrangement the night of the accident, or at any time, are peculiarly within Defendants' knowledge and inaccessible to Plaintiffs without discovery.  *See Vantu v. Echo Recovery, L.L.C.*, 85 F. Supp. 3d 939, 944 (N.D. Ohio 2015) (denying motion to dismiss allegation of agency relationship as too speculative because

the plaintiff "lack[ed] access to the materials and information that would establish the precise relationship between" the defendants).

Plaintiffs contend that their allegations, made within the permissible limits of their knowledge and viewed in the light most favorable to them, satisfies the pleading standard of Rule 12(b)(6).  Because the Court cannot say with certainty that Plaintiffs can prove no set of facts sufficient to entitle them to relief against Mr. Sacoolas for his vicarious liability, the Court must deny Defendants' motion to dismiss these claims.

    5.    Leave to Amend

In the event the Court believes any of Plaintiffs' allegations are inadequate, Plaintiffs respectfully request that any dismissal should be without prejudice, allowing Plaintiffs the opportunity to amend their complaint.  *See Foman*, 371 U.S. at 182 (noting dismissals for failure to state a claim under 12(b)(6) should generally permit leave to amend).  Leave to amend should freely be given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *Foman* at 182.  None of these reasons for denying Plaintiffs the ability to amend is present here.

## V.  <u>CONCLUSION</u>

Plaintiffs respectfully request the Court deny Defendants' motion to dismiss.

Dated: December 14, 2020                    Respectfully submitted,


                                            *By:* /s/ Steven J. Toll
                                            Steven J. Toll, VSB #15300
                                            Agnieszka M. Fryszman (*pro hac vice*)
                                            **COHEN MILSTEIN SELLERS & TOLL
                                            PLLC**
                                            1100 New York Ave. NW
                                            East Tower, 5th Floor
                                            Washington, DC 20005
                                            Telephone: (202) 408-4600
                                            Facsimile: (202) 408-4699
                                            Stoll@cohenmilstein.com
                                            AFryszman@cohenmilstein.com


                                            Theodore J. Leopold (*pro hac vice*)
                                            Leslie M. Kroeger (*pro hac vice*)
                                            Poorad Razavi (*pro hac vice*)
                                            **COHEN MILSTEIN SELLERS & TOLL
                                            PLLC**
                                            2925 PGA Boulevard, Suite 200
                                            Palm Beach Gardens, FL 33410
                                            Telephone: (561) 515-1400
                                            Facsimile: (561) 515-1401
                                            tleopold@cohenmilstein.com
                                            lkroeger@cohenmilstein.com
                                            prazavi@cohenmilstein.com

                                            *Attorneys for Plaintiffs*

27

## **CERTIFICATE OF SERVICE**

I hereby certify that December 14, 2020, I electronically filed the foregoing Plaintiffs'

Opposition to Defendants' Motion to Dismiss with the Clerk of the Court using the ECF, who in

turn sent notice to all counsel of record.


Dated:      December 14, 2020                    /s/ Steven J. Toll
                                                Steven J. Toll