IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CHARLOTTE CHARLES and TIM DUNN,          )
Individually and as Co-Administrators of the   )
ESTATE OF HARRY DUNN, and                )
NIALL DUNN, Individually,                )
        Plaintiffs,                      )
                                         )
            v.                           )          Civil Action No. 1:20-cv-1052
                                         )
ANNE SACOOLAS and JONATHAN               )
SACOOLAS,                                )
        Defendants.                      )

## ORDER

This action grows out of a tragic fatal car accident that occurred in the United Kingdom on August 27, 2019. The threshold question presented in this case is whether defendants' motion to dismiss this action on *forum non conveniens* grounds should be granted. Oral argument on this issue was held telephonically on February 3, 2021, at which time argument focused solely on the *forum non conveniens* motion, and oral argument on the remaining Rule 12(b)(6), Fed. R. Civ. P., motion to dismiss was postponed pending disposition of the *forum non conveniens* motion.

As the motion to dismiss on *forum non conveniens* grounds has been fully briefed and argued, that motion is now ripe for disposition. For the reasons that follow, that motion must be denied.

## I.

The following facts are derived from the record in this case and are not significantly disputed:

- Plaintiffs Charlotte Charles, Tim Dunn, and Niall Dunn are the parents and twin brother, respectively, of the deceased, Harry Dunn, and are all citizens and residents of the United Kingdom.

1

- Defendants Anne and Jonathan Sacoolas are citizens of the United States and residents of Virginia. At the time of the accident at issue in this case, defendants had resided in the United Kingdom for several weeks. At the time of the accident, Defendant Jonathan Sacoolas was employed by the United States Government at the Royal Air Force ("RAF") Croughton United States Air Force Base, and it appears that Defendant Anne Sacoolas was employed by the United States Department of State.

- The fatal accident at issue in this case occurred on the evening of August 27, 2019. At that time, Defendant Anne Sacoolas was driving two of her three children home from dinner at RAF Croughton United States Air Force Base when she collided with a motorcycle operated by nineteen-year-old Harry Dunn on the B4031 roadway. Defendant Anne Sacoolas was operating a British model Volvo SUV owned by Defendant Jonathan Sacoolas with the steering wheel on the right side of the car, and was driving on the wrong side of the road when she collided with Harry Dunn.

- As a result of the accident, Harry Dunn suffered severe injuries, including multiple open fractures, internal injuries, and degloving injuries, as well as a head injury.

- The Complaint alleges that, although Defendant Anne Sacoolas had a cellphone at the time of the accident, she did not call an ambulance for Harry Dunn or otherwise seek medical attention for him at that time. It further appears that a passerby who came upon the scene shortly after the accident called an ambulance. When paramedics arrived, Harry Dunn was conscious, breathing, and able to speak with them.

- After speaking with police at the scene of the accident, Defendant Anne Sacoolas, with the permission of the police, departed the scene of the accident.

- Harry Dunn was taken in an ambulance to a hospital, where he died.

- Following the accident, on August 28, 2019, Defendant Anne Sacoolas met with United Kingdom police officers at her home in the United Kingdom to discuss the incident in the presence of a United States lawyer and a United States Department of State official. In the course of the meeting, it appears that Defendant Anne Sacoolas assured the police that she had no plans to leave the United Kingdom. It also appears that no mention was made during the meeting of the issue of diplomatic immunity for Defendant Anne Sacoolas.[1]

---

[1] Facts relating to discussions between defendants and the United Kingdom police and between representatives of the governments of the United States and United Kingdom are derived from an opinion of the High Court of Justice of the United Kingdom in which that court concluded that Defendant Anne Sacoolas enjoyed immunity from criminal prosecution in the United Kingdom stemming from the August 27, 2019 fatal car accident. *See R (Charles & Dunn) v. Secretary of State for Foreign and Commonwealth Affairs* [2020] EWHC 3185.

- Several days after the accident, it appears that United States Embassy officials formally asserted diplomatic immunity on behalf of Defendant Anne Sacoolas for any criminal prosecution stemming from the August 27, 2019 car accident.

- It also appears that a series of discussions between representatives of the United States and United Kingdom governments followed, during which the United Kingdom representatives sought from the United States government a waiver of Defendant Anne Sacoolas' diplomatic immunity for the August 27, 2019 car accident. The United States government declined to waive diplomatic immunity for the August 27, 2019 car accident and informed the United Kingdom government that Defendant Anne Sacoolas and her family would depart the United Kingdom the next day. Despite the strong objection of the United Kingdom government, Defendant Anne Sacoolas and her family departed the United Kingdom the next day, on September 15, 2019.

- On December 22, 2019, the Crown Prosecution Service of England and Wales authorized the local United Kingdom police to charge Defendant Anne Sacoolas with causing Harry Dunn's death by dangerous driving. On January 10, 2020, the United Kingdom government submitted an extradition request to the United States, which the United States denied.

On September 9, 2020, plaintiffs brought the instant action against defendants in the Eastern District of Virginia, defendants' home forum. The action alleges negligence, breach of duty, and wrongful death.[2] On October 30, 2020, defendants filed the instant Motion to Dismiss, moving for dismissal of the case under the doctrine of *forum non conveniens* and, alternatively, for partial dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P.

## II.

It is well settled that the analysis of a motion to dismiss on *forum non conveniens* grounds requires a two-step analysis. First, it is necessary to determine whether the alternative forum—in this case the United Kingdom—is "available to the plaintiff [and whether] the alternative forum is adequate." *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 800 (4th Cir. 2013). Second, it is necessary to determine whether the alternative forum is "more convenient in light of the public

---

[2] The Complaint originally included four counts that asserted claims brought under Virginia law. The parties agree that the laws of England apply to plaintiffs' claims asserted in the Complaint, and therefore plaintiffs withdrew the four counts brought under Virginia law. *See* Pls. Opp'n to Mot. to Dismiss, 2, n. 1.

and private interests involved." *Id.*[3] This two-step analysis begins with determining whether the United Kingdom—the alternative forum—is available and adequate. And in this respect, the Fourth Circuit has made clear that the party seeking dismissal on *forum non conveniens* grounds bears the burden of proving that an available and adequate alternative forum exists. *See Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010).

The requirement of the availability of an alternative forum "will be satisfied when the defendant is 'amenable to process' in the [foreign] jurisdiction." *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981)). Additionally, the adequacy requirement may be met when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the same benefits as they might receive in an American court." *Fidelity Bank PLC v. N. Fox Shipping N.V.*, 242 Fed. App'x 84, 90 (4th Cir. 2007). The Supreme Court has also identified that there are certain "rare circumstances" in which "the remedy offered by the other forum is clearly unsatisfactory," and therefore the adequacy requirement in that instance "may not be satisfied." *Piper Aircraft Co.*, 454 U.S. at 255, n. 22.

These principles, applied here, point to the conclusion that the United Kingdom arguably provides an available forum, but not one that is fully adequate. The availability requirement is arguably satisfied here because defendants are amenable to the service of process in the United Kingdom. In this respect, the record reflects that defendants have authorized service of process on their behalf in the United Kingdom, and defendants' expert declaration makes clear that defendants' authorization would be sufficient to make defendants subject to service of process in the United

---

[3] *See also Jiali Tang v. Synutra Int'l, Inc*., 656 F.3d 242, 248 (4th Cir. 2011); *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010).

Kingdom. *See* Declarations of Defendants Anne Sacoolas and Jonathan Sacoolas, Defs. Mem. in Support of Mot. to Dismiss, Ex. 1 & 2; Expert Opinion on English Law by Howard Palmer Q.C., Defs. Reply, Ex. 1. But importantly, although defendants have consented to service of process in the United Kingdom, they have not agreed to be subject to the service of subpoenas or to the taking of depositions in the United Kingdom, so in this respect the availability of the United Kingdom forum is somewhat limited. With this important exception, the forum of the United Kingdom appears to be an available forum to the extent that defendants agree to service of process in the United Kingdom.

Although the United Kingdom is arguably an available forum, it is not one that is fully adequate. In order for an alternative forum to be adequate, all parties must not "be deprived of all remedies or treated unfairly" and must be able to "come within that forum's jurisdiction." *See Tang*, 656 F.3d at 249 (quoting *Fidelity Bank PLC*, 242 F. App'x at 90). There is no record evidence to suggest that a forum in the United Kingdom would in any way deprive plaintiffs of all remedies available under applicable English law or otherwise treat the parties unfairly. Nor is there any record evidence to suggest that the remedies offered by a United Kingdom court are so clearly unsatisfactory as to be inadequate. *See Piper Aircraft Co.*, 454 U.S. at 255, n. 22. Nonetheless, although all parties *can* enter the United Kingdom, that forum is not fully adequate because defendants have made clear that they *will not* return to the United Kingdom to participate in the trial or other related civil proceedings if the case is brought there. Specifically, defendants' counsel in their briefing write that "[n]either Defendant Anne Sacoolas nor Defendant Jonathan Sacoolas will agree to return to England for depositions or trial." Defs. Mem. in Support of Mot. to Dismiss, 6. There is no precedent for the proposition that an alternative forum is "adequate" in a *forum non conveniens* analysis where, as here, the movants have declared that the movants themselves will

5

not return to the alternative forum.[4] Although a trial of the civil claims in this case could conceivably take place in the United Kingdom without the presence of defendants, that trial would be a mere bare-bones trial given that evidence from defendants necessary for determining vicarious liability and damages would have to be taken through deposition or video testimony in the United States to be presented in the United Kingdom. Such a bare-bones trial is far less preferable than live testimony presented to a jury, and certainly does not serve the ends of justice or the convenience of the parties, the jury, and the court.[5] Thus, the proposed United Kingdom forum is in an important sense not adequate given the refusal of defendants to return to the United Kingdom to participate in the trial and related proceedings.

### III.

But assuming *arguendo* that the United Kingdom forum is fully available and adequate, the next step in the two-part *forum non conveniens* analysis is to determine whether "the alternative forum is more convenient in light of the public and private interests involved." *DiFederico*, 714 F.3d at 800. In this regard, the Supreme Court has identified several private and public factors district courts should consider when deciding motions to dismiss on *forum non conveniens* grounds.

The private factors identified by the Supreme Court include "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view

---

[4] To be sure, if defendants were willing to return to the United Kingdom for trial and related proceedings, a *forum non conveniens* dismissal of this action might well be warranted. But given the fact that defendants refuse to return to the United Kingdom for trial and related proceedings, dismissal of this action on *forum non conveniens* grounds is clearly not warranted.

[5] Plaintiffs also argue that the Untied Kingdom is an inadequate forum because defendants have not demonstrated that they have any assets in the forum to satisfy a judgment against them. This factor is more appropriately considered in the second step of the *forum non conveniens* analysis. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (including "questions as to the enforcibility [sic] of a judgment" in the consideration of private interest factors).

would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). The Supreme Court has also identified several public interest factors to consider, including: "(1) [a]dministrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; and (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or in application of foreign law; (5) and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co.*, 454 U.S. at 241 n. 6 (quoting *Gilbert*, 330 U.S. at 509).

Although there is ordinarily a strong presumption in favor of a plaintiff's choice of forum, that presumption "applies with less force when the plaintiff or real parties in interest are foreign." *Piper Aircraft Co.*, 454 U.S. at 266. However, as the Fourth Circuit has made clear, "[t]his lack of deference is muted . . . when the defendant is a resident and citizen of the forum he seeks to have declared inconvenient for litigation." *Galustian*, 591 F.3d at 732. Additionally, the Fourth Circuit has recently highlighted that, while these private and public interest factors guide the analysis of a motion to dismiss under *forum non conveniens,* the "ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *DiFederico*, 714 F.3d at 804 (quoting *Koster v. (American) Lumbermens Mut. Cas. Co*., 330 U.S. 518, 524 (1947)). Moreover, the Fourth Circuit has also made clear that "[a] defendant seeking dismissal against a non-citizen plaintiff must make a showing that the 'relevant public and private interests *strongly favor* a specific, adequate, and available alternative forum.'" *Id*. at 802 (emphasis in original) (quoting *Tang v. Synutra Int'l, Inc*., 656 F.3d 242, 246 (4th Cir. 2011)). Therefore, binding precedent makes

clear that the defendants here seeking dismissal against noncitizen plaintiffs must make a showing that the private and public factors "*strongly favor*" the United Kingdom forum. *Id.*

Applied here, these principles and factors persuasively support the conclusion that the relevant private and public interests favor the Eastern District of Virginia retaining jurisdiction over this case.

The relevant private interest factors in this case clearly weigh in favor of retaining this case in the Eastern District of Virginia. Although the fatal car accident that is at the heart of this case occurred in the United Kingdom, two key witnesses, the two defendants, are available only in the United States, as they refuse to return to the United Kingdom for trial. Furthermore, all witnesses identified by plaintiffs have voluntarily agreed to participate in the case and to travel to the United States to do so. Indeed, defendants have not identified any witness who would be unavailable to participate in a trial in the Eastern District of Virginia, even as defendants themselves declare that they will not travel to the United Kingdom to participate in depositions or a trial there. Additionally, though there may be documentary evidence, such as health and employment records, located in the United Kingdom, defendants have not presented any evidence or provided any reason to suggest that such records could not be retrieved or obtained electronically or by mail to be presented at a trial here. Moreover, although the site of the accident is in the United Kingdom, this alone is not a decisive factor, particularly in light of the fact that defendants do not dispute that Defendant Anne Sacoolas was negligent in the operation of a motor vehicle and that her negligence was the proximate cause of Harry Dunn's death, thereby rendering unnecessary a visit to the accident site.[6] Finally, the enforceability of any judgment obtained by plaintiffs does not weigh in

---

[6] While it is commendable that Defendant Anne Sacoolas admits that she was negligent and that her negligence caused Harry Dunn's death, this does not equate acceptance of responsibility. Full acceptance of responsibility entails facing those harmed by her negligence and taking responsibility for her acts where they occurred, in the United Kingdom.

favor of a United Kingdom forum, since the judgment would be enforceable against defendants in the United States and against their insurer in the United Kingdom. *See* Expert Opinion on English Law by Howard Palmer Q.C., Defs. Reply, Ex. 1.[7] Thus, private interests weigh in favor of the case remaining in the Eastern District of Virginia.

Additionally, the public interest factors identified by the Supreme Court do not require that this case be dismissed on *forum non conveniens* grounds. In this respect, defendants emphasize the administrative challenge an American forum faces in applying English law. This argument significantly overstates the challenge, as even those issues requiring the application of potentially unfamiliar English law will pose little difficulty because the source material is in English. And in any event, as the Fourth Circuit has observed, interpreting unfamiliar legal sources "is precisely the kind of work American judges perform on a daily basis." *DiFederico*, 714 F.3d at 808. Thus, this factor does not favor the United Kingdom forum.

Although the United Kingdom undoubtedly has an interest in this controversy, so too does the United States, as defendants are citizens of the United States and were representing the United States in the United Kingdom when the accident occurred. It is significant to note that the United Kingdom government has expressed firm support for the plaintiffs' choice of forum in the Eastern District of Virginia. In this respect, a representative of the United Kingdom has stated:

> I strongly support [plaintiffs'] right to bring this case. It is of course for the US courts to decide the issue of venue but for our part the British Government takes the view that British citizens can bring their case in whichever court they think

---

[7] Plaintiffs argue that it is unclear whether a judgment in the United Kingdom would be enforceable against defendants' insurer in the United Kingdom because the European Union directive requiring the availability of such recovery would be no longer be in force in a post-Brexit United Kingdom. In fact, as defendants' expert makes clear, because the European Union directive was enacted through domestic legislation in the United Kingdom, "any judgment obtained against [defendants] may be enforced directly against the Insurer" in the United Kingdom. Expert Opinion on English Law by Howard Palmer Q.C., Defs. Reply, Ex. 1. Because it appears that a judgment would be enforceable against the insurer in the United Kingdom and against the defendants in the United States, this factor favors neither forum.

> appropriate. . . . I hope therefore [plaintiffs'] action in the United States is able to proceed.

Letter from the RT Hon Dominic Raab MP, Secretary of State for Foreign, Commonwealth and Development Affairs to Charlotte Charles & Tim Dunn (Dec. 10, 2020), Pls. Opp'n to Mot. to Dismiss, Ex. 6.

Because the United States and the United Kingdom both have an interest in this case and because the United Kingdom supports this forum, this factor does not warrant dismissal on *forum non conveniens* grounds. Additionally, because this forum has an interest in the case, it is not unfair to burden a jury in the Eastern District of Virginia with deciding this controversy. Finally, there is no evidence on the record comparing docket condition in the United Kingdom and the Eastern District of Virginia, and delays due to Covid-19 impact both forums equally, so that factor favors neither forum. Thus, the public factors favor neither forum. In summary, the private and public interest factors do not weigh decisively in favor of dismissing on *forum non conveniens* grounds.

Seeking to avoid this outcome, defendants argue that this is a damages-only case that could be resolved in the United Kingdom without defendants' presence—or, indeed, without a trial at all. Defendants' position is unsupported by the facts in this case. First, it is not clear that this case is damages-only. Defendants dispute the vicarious liability of Defendant Jonathan Sacoolas, and that controversy could involve genuine disputes of material fact that testimony from defendants would be required to resolve. Therefore, a trial on certain liability issues does not, at this time, appear unlikely, and if such a trial were to occur, defendants' testimony would likely be required. Defendants contend that should their testimony be required in the United Kingdom, that testimony can be obtained by remote video conference. But it is unclear whether such a procedure would be permitted by the United Kingdom court. Moreover, even if such a procedure were allowed in the United Kingdom, it is clear that the convenience of the parties, the jury, and the court, which is

10

relevant to the *forum non conveniens* analysis, would favor a forum in which in-person testimony is available for necessary and important witnesses such as defendants.

Moreover, with respect to damages, Defendant Anne Sacoolas was the first person to witness the pain and suffering of Harry Dunn in the aftermath of the accident and before Harry Dunn's death, and therefore she might be a necessary witness on the question of damages relating to Harry Dunn's pain and suffering prior to his death. Indeed, in similar circumstances, the Fourth Circuit has emphasized the importance of the personal attendance of the parties.[8] Thus, even if this case involves solely damages, Defendant Anne Sacoolas' testimony may well be necessary, and in-person testimony would clearly be preferable to any of the alternatives proposed by defendants.

It should also be noted that there also exists an obvious inconsistency between defendants' motion to dismiss on *forum non conveniens* grounds and the circumstances underlying the case. While defendants here argue that the case should be dismissed so that the case may be brought in the "more convenient" forum of the United Kingdom, at the same time Defendant Anne Sacoolas has declared that she will not return to the United Kingdom to face criminal prosecution because "she's concerned that she will not receive fair treatment both with the press and the local community." Feb. 3, 2021 Hearing Tr. 9:25-10:2. This inconsistency plays no clear role in the *forum non conveniens* analysis, but it underlies many of the factors favoring denial of defendants' motion to dismiss on this ground.

In conclusion, the convenience of the parties and the ends of justice are best served by retaining jurisdiction in this case in the Eastern District of Virginia.

---

[8] *See DiFederico*, 714 F.3d at 805 ("[The plaintiffs] may be necessary witnesses on the question of damages. . . . Technically, the trial may be able to go forward without the [plaintiffs'] personal attendance. But, [defendant] provides no support for the claim that the [plaintiffs'] inability to attend trial in [the alternative forum] would not place them at a distinct disadvantage.").

11

Accordingly,

It is hereby **ORDERED** that defendants' Motion to Dismiss (Dkt. 14) is **DENIED IN PART** and **DEFERRED IN PART**. Defendants' motion is denied insofar as defendants' motion to dismiss on *forum non conveniens* grounds is denied. Ruling on defendants' motion is deferred in all other respects.

It is further **ORDERED** that a hearing on the remaining issues raised in defendants' Motion to Dismiss (Dkt. 14) which was previously scheduled for Wednesday, February 17, 2021 at 3:00 p.m is **RESCHEDULED** for **Wednesday, March 3, 2021 at 3:00 p.m.** and will be **HELD TELEPHONICALLY**.

It is further **ORDERED** that the parties are **DIRECTED** to comply with the Courtroom Deputy's instructions regarding the procedure for participation in the telephonic hearing.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
February 16, 2021

T. S. Ellis, III
United States District Judge