# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| CHARLOTTE CHARLES and TIM DUNN, Individually and as Co-Administrators of the ESTATE OF HARRY DUNN, and NIALL DUNN, Individually,<br><br>*Plaintiffs*,<br><br>v.<br><br>ANNE SACOOLAS and JONATHAN SACOOLAS,<br><br>*Defendants*. | Case No.: 1:20-cv-01052 |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER**

Plaintiffs oppose the Government's motion for a protective order, which is an unwarranted and unnecessary effort to interfere with the orderly processes of a civil wrongful death case and will unfairly prejudice Plaintiffs. The Government's proposed protective order is overbroad, seeking to protect not only information about Defendants' employment (a scope that Plaintiffs do not oppose, as they informed the Government weeks ago), but also information "that is in any way . . . directly or indirectly . . . related to the Defendants' or any other individuals' employment with the United States Government." That ill-defined scope threatens to allow Defendants to hide relevant information, described herein, that does not implicate any compelling national security interests.

**BACKGROUND**

A. **The Government's Position**

The Government has been evasive about the instant Motion for weeks, despite Plaintiffs' willingness to accommodate the specific concerns the Government raises. In correspondence and

2

conversations, Government counsel stated that it would be seeking to limit discovery. While Plaintiffs' counsel expressed a willingness to work with the Government to harmonize its interest in national security with the Plaintiffs' interests in pursuing their case, the Government declined to explain precisely what it was seeking and insisted on filing the present motion.[1]

### B. Plaintiffs Do Not Intend to Elicit the Specifics of Defendants' Employment. Defendants, However, Have Made No Secret that both Anne Sacoolas and Jonathan Sacoolas are Government Employees.

As a starting point, Plaintiffs have no interest in the specific circumstances of Defendants' employment. Indeed, Plaintiffs have no information about Defendants' employment save what defense counsel has stated to the Court. *See* Hrg. Tr. (Feb. 3, 2021), at 8:16-20 (The Court asked, "Are you saying that Mr. and Mrs. Sacoolas were employed by an intelligence agency of the United States, and that's why she left?" Defense counsel responded, "I think that was a significant factor, certainly, especially for Mr. Sacoolas."). Beyond that, Ms. Sacoolas's circumstances as a government employee have been directly or indirectly referenced by two United States presidents and the prime minister of Britain. On October 15, 2019, President Trump invited the Dunn family

---

[1] Plaintiffs' counsel informed the Government that Plaintiffs opposed any restrictions on discovery but expressed a willingness to discuss how the Government's interests could be protected by withholding any discovery requests regarding Defendants' employment. The Government responded with a draft protective order identical to what is proposed with the instant motion. Plaintiffs' counsel explained why the language as drafted was too broad and could bar discovery concerning a simmering discovery dispute in this case about whether Ms. Sacoolas was on her phone around the time of the collision. Plaintiffs' counsel also explained that a protective order at this juncture is premature and appears unnecessary. Plaintiffs agreed to withdraw discovery requests that ask Defendants to identify their employment. Plaintiffs also explained that since learning of this concern about identifying Defendants' employment, Plaintiffs' counsel had not pressed for this information. On July 21, 2021, the Government responded: "Unfortunately, we are not able to provide any further explanation of why the limited information you agree to protect is not sufficient to protect the United States' interests." The Government's correspondence—as with its other correspondence—did not raise the issue of relevance. On July 23, 2021, the Government filed a *Motion for Leave to File Motion for Protective Order and Supporting* Ex Parte, In Camera *Submission*, ECF No. 62.

3

to the White House where he met with them and precipitously announced that Ms. Sacoolas was in a nearby room and wanted to meet with them.[2] More recently, Prime Minister Boris Johnson said that he and President Biden were "working together" on the case of Harry Dunn and that Biden was "actively engaged" in the case.[3] That either Ms. Sacoolas or Mr. Sacoolas, or both, has some position of importance and sensitivity in the U.S. Government is self-evident from these statements.

Prior to being contacted by government attorneys, Plaintiffs had propounded interrogatories and requests for admission seeking additional information on Defendants' employment. Plaintiffs' counsel, however, told the government attorneys that they would withdraw the discovery requests and would not ask Defendants questions regarding the nature of their employment during their depositions. This, however, was not acceptable to the Government.

**C. The Scope of Relevance in this Case Includes Facts Tending to Show Why Ms. Sacoolas Was on the Wrong Side of the Road When She Struck Harry Dunn.**

This case arises out of a tragic and fatal accident that occurred on August 27, 2019, on a public roadway near Croughton, Northamptonshire, England.

That evening, at about 8 PM, Defendant Anne Sacoolas left a social gathering at RAF Croughton United States Air Force base. At the time, she had been living in the United Kingdom and had been driving a large Volvo XC90 SUV for approximately a month. The steering wheel, pedals and other driving controls of the SUV were located on the right side of the vehicle. *See* Defs.' Answer ¶¶ 13-14, ECF No. 29. Despite having lived and driven in the United Kingdom for

---

[2] Katie Rogers & Iliana Magra, "Trump Stuns Grieving Britons: Meet the Suspect in Your Son's Death," N.Y. Times (Oct. 16, 2019), https://www.nytimes.com/2019/10/16/world/europe/donald-trump-harry-dunn-anne-sacoolas.html

[3] Jennifer Hassan, "Boris Johnson says he and President Biden are 'working together' on case of Harry Dunn," Wash. Post (June 11, 2021),
https://www.washingtonpost.com/world/2021/06/11/harry-dunn-case-biden-johnson/

several weeks while driving a British model SUV with the steering wheel on the right side, Defendant Anne Sacoolas pulled out of the base onto the wrong side of the public roadway. Defs.' Answer ¶ 17, ECF No. 29.

Ms. Sacoolas drove almost a quarter mile on the wrong side of the road until the fatal event occurred.[4] On a bend in the roadway, she struck Harry Dunn head-on. Harry was catapulted off his motorcycle and into the front of Ms. Sacoolas' SUV, leaving blood and clothing embedded in the front windshield. Harry landed to the side of the SUV. Defs.' Answer ¶ 18, ECF No. 29. After enduring horrific suffering, Harry succumbed to his injuries that same night. Compl. ¶ 32. Ms. Sacoolas admits to driving on the wrong side of the road when she struck Harry. A. Sacoolas Resp. to RFA No. 2. The unanswered question is whether she was distracted while driving on the wrong side of the road and, if so, why. Discovery thus far raises the possibility that Ms. Sacoolas was distracted by her mobile telephone (hereinafter "phone") and establishes that relevant phone data was deleted. Questions germane to this point will be asked during the depositions of Defendants, and counsel for the Government have told Plaintiffs' counsel that they would like to resolve the instant motion prior to those depositions.

Plaintiffs are concerned that the Government's instant motion is an effort to thwart Plaintiffs' ability to inquire into and introduce evidence of the circumstances of Harry's death. The Defendants' recent responses to Plaintiffs' discovery suggest that they are not being forthright regarding those facts. For more than three months, in discovery, Plaintiffs have pursued a line of inquiry about Ms. Sacoolas's phone: both whether she was using her phone and what happened to the data on her phone. To date, her responses have, at different times, been evasive, non-responsive

---

[4] Patrick Wintour, "Harry Dunn Death: Foreign Office Doubt Anne Sacoolas Will Return to UK," The Guardian (Oct. 8, 2019), https://www.theguardian.com/politics/2019/oct/08/dominic-raab-urges-us-to-reconsider-anne-sacoolas-immunity

and inconsistent, and underscore why Plaintiffs should not be prevented from further inquiring about this topic.

> **D. Ms. Sacoolas's Statements in Discovery about her Phone Have Been Evasive, Non-Responsive, Inconsistent, and Raise Concerns that Relevant Data Has Been Deleted.**

Plaintiffs have tried to clarify whether Ms. Sacoolas was on her phone prior to the collision through discovery requests. Defendants' answers, however, only raise more questions about not only her conduct prior to the collision, but also the whereabouts of her phone data.

In short, at the time of the accident, Ms. Sacoolas' phone was with her in her car. A. Sacoolas Resp. to RFA No. 2. The data on that phone likely would reveal whether she was using the phone just before or at the time of the collision, for example, speaking to someone on a call, reading a text, checking the weather, or otherwise engaged with her phone so as to be distracted from realizing that she was driving on the wrong side of the road. However, relevant data from her phone is now missing.

Defendant Anne Sacoolas first claimed that she disposed of the SIM card[5] that had been in her phone on August 27, 2019, and that she had "no data on the phone from August, 2019." Ex. B, p. 2, Defs.' Supp Answers to Interrogs. No. 8 & 12 (July 30, 2021).[6] Defendant Jonathan

---

[5] A SIM card is "a card that is inserted into a device (such as a cell phone) and that is used to identify a subscriber on a communications network and to store data (such as phone numbers or contact information)." Merriam-Webster, https://www.merriam-webster.com/dictionary/SIM%20card

[6] Defendants' Supplemental Answers to Interrogatories No. 8 & 12, attached as Exhibit B, is a compendium of their evolving answers to interrogatories. With respect to Interrogatory No. 8, Exhibit B includes references to (1) Defendants' initial answers, provided on May 17, 2021; (2) their supplemental/updated answers, provided on June 8, 2021 (by Ms. Sacoolas) and June 11, 2021 by Mr. Sacoolas); and further supplemental/updated answers provided on July 30, 2021. Similarly, with respect to Interrogatory No. 12, Exhibit B includes references to Defendants' initial answers on June 8 and 11, respectively, and their supplemental/updated answers on July 30.

Sacoolas admitted he had discarded his phone after August 27, 2019, and did not mention a SIM card. *Id.*

Three weeks after informing Plaintiffs that they had disposed of Ms. Sacoolas's SIM card and Mr. Sacoolas's phone, Defendants both supplemented their answers to say that Mr. Sacoolas had found their SIM cards. *See* Ex. B, p. 3. Ms. Sacoolas supplemented her answers mere hours after Plaintiffs sent a letter to defense counsel requesting a meet and confer to discuss Defendants' insufficient answer to the interrogatory about missing phone data, and Mr. Sacoolas transmitted his identical supplemental answer three days later. Defendants offered no further explanation of why they were unable to locate the SIM cards prior to their initial answer; they also did not explain how they were able to locate the SIM cards just after Plaintiffs' request for the meet and confer; and they offered no explanation why the first answer is now being repudiated.

In their supplemental answer, Defendants also informed Plaintiffs' counsel that they had engaged a vendor "to determine whether there is any phone or message data that can be retrieved from the SIM card or Anne Sacoolas's iPhone." Ex. B, pp. 3, 5. The vendor report regarding Ms. Sacoolas's phone and Defendants' SIM cards raises more questions than it answers. *See* AON, Anne Sacoolas Data Preservation Report, Bates #SACOOLAS 00338-44. In terms of data from August 27, 2019, the day of the collision, Defendants' vendor's examination of Ms. Sacoolas's phone only located a single text message (which has not been produced). *Id.* at 00340. The examination also determined that "[t]he two SIM cards contained no call or text message records within or outside of the time period of interest." *Id.* at 00342.

Ms. Sacoolas admitted calling her husband shortly after the accident. *See* Defs.' Answers to Interrog. Nos. 1 & 2; A. Sacoolas Request for Admission No. 13. Her cell phone would have kept a record of that call and any other calls, texts, or other communications made during or just

prior to the accident. The vendor found no record of Ms. Sacoolas' call to her husband or any other call on August 27, 2019. AON, Anne Sacoolas Data Preservation Report, Bates #SACOOLAS 00341. However, the vendor did find call records on the phone from both the day before the accident and the day after the accident. *Id.* This begs the question: what happened to the missing data and is other data missing from the day of the accident?

Ms. Sacoolas has not denied deleting data from her phone and has not explained how the data was deleted, stating only that she "did not take any steps *intended* to remove data from her phone." Ex. B, p. 5 (emphasis added). This answer, by itself, begets the full inquiry that a deposition can provide.

### E. Ms. Sacoolas Took Her Phone with Her When She Left the Country.

On August 28, 2019, the day after Harry's death, the Northamptonshire Police informed Ms. Sacoolas that she was a criminal suspect. Specifically, they informed her that "she was suspected of causing death by dangerous driving and would be asked to attend an interview at a police station." *See R (Charles & Dunn) v. Secretary of State for Foreign and Commonwealth Affairs [2020], Approved Judgment, EWHC 3185* at ¶ 44. (Notably, the Crown Prosecution Service considers "using a hand-held mobile phone" as a circumstance "likely to be characterised as dangerous driving" as opposed to the less serious careless or inconsiderate driving. CPS Legal Guidance on Road Traffic-Charging, https://www.cps.gov.uk/legal-guidance/road-traffic-charging.) Ms. Sacoolas "assured the police at that time that she had no plans to leave the UK." *Id.* Eighteen days later, on September 15, 2019, Ms. Sacoolas fled the UK, *Id.* at ¶ 4, thereby placing herself and the phone beyond the reach of the prosecution. The US Embassy informed the UK's Foreign Office of her departure the following day. *Id.* at ¶ 70. Plaintiffs learned of her departure ten days later. *Id.* at ¶ 71.

8

Ms. Sacoolas deprived the authorities of the opportunity to examine her phone when she left the UK on September 15, 2019, while under investigation for causing death by dangerous driving. As set forth in the attached declaration by Stuart Blackwood, an experienced collision investigator for the police in Great Britain, an examination of the driver's mobile phone to determine if it was a factor in a crash is consistent with well-established UK standards for fatal collision investigations, and the process by which the detectives were investigating Ms. Sacoolas's case realistically would have included the opportunity for them to seize the phone and examine it, had she not left the country. Ex. C ¶ 35, Blackwood Decl. That the police intended to investigate her phone is consistent with the police telling the Dunn family, on September 30, 2019, that there was a pending inquiry regarding Ms. Sacoolas's phone. *See* Ex. D, Questions from Harry's Family (transmitted by Northamptonshire Police on Sept. 30, 2019).

Ms. Sacoolas has pursued a media campaign to portray herself as having "cooperated" with the UK investigation and "accepted" responsibility for her conduct.[7] But fleeing the country with her phone following a statement to the police that she would be remaining is a far cry from cooperation. As the Court, in an earlier hearing, has noted, "accepting full responsibility doesn't mean you run away; it means that you stay there and face it." Hrg. Tr. (Feb. 3, 2021), at 10:6-8.

---

[7] *See, e.g.*, Amy Walker, "Diplomatic immunity no longer applies to Anne Sacoolas, says Foreign Office," The Guardian (Oct. 13, 2019), https://www.theguardian.com/uk-news/2019/oct/13/harry-dunn-anne-sacoolas-driver-who-fled-uk-devastated-by-fatal-crash (Ms. Sacoolas's counsel stated: "She will continue to cooperate with the investigation"); Patrick Wintour, "Anne Sacoolas refuses to return to face Harry Dunn charges," theguardian.com (Dec. 20, 2019), https://www.theguardian.com/uk-news/2019/dec/20/anne-sacoolas-charged-over-death-of-harry-dunn (Ms. Sacoolas's counsel stated: "She has cooperated fully with the investigation and accepted responsibility").

### F. Ms. Sacoolas's Claim that She "Offered" Her Phone to the Police Is Not Credible.

Recently, in a series of public statements, Ms. Sacoolas has pushed the position that she "offered" her phone to the police (a contention with no support in the written record of the police investigation), thereby acknowledging that her phone and its data were important sources of evidence to preserve.

The first mention of this "offer" did not occur until March 2, 2021, in a court filing by Defendants. In that filing, Defendants claimed that after the collision, Ms. Sacoolas "offered her cell phone to the police to confirm that she was not distracted by texting or talking on the phone." Notice by Defs. Disputing Factual Statements in Order, ECF No. 24. (The Court struck this filing, labelling it "impertinent". *See* Order, ECF No. 26.) This was the first time Plaintiffs learned of this supposed "offer." The claim of an "offer" next appeared in a March 9, 2021, interview with the BBC where counsel stated that Ms. Sacoolas "agreed to offer" her phone to the police on the night of August 27, 2019.[8] In a recent response to an interrogatory, Ms. Sacoolas stated this "offer" occurred on August 28, 2019, during a police interview the day after the accident. A. Saccolas Answer to Interrog. No. 9 (June 8, 2021). The police record makes no mention of Ms. Sacoolas's alleged "offer." In response to Plaintiffs' request for any documents evidencing the "offer," Defendants responded that they had none that were not privileged. Defs.' Resp. to Second RFPs, Nos. 26 & 27 (June 14, 2021).

A deposition will logically pursue details of the supposed "offer" and, importantly, probe why Ms. Sacoolas did not take care to preserve the phone data—the one piece of evidence that, in her view, would be exculpatory.

---

[8] BBC: Law in Action, *Exclusive Interview with the Lawyer of Anne Sacoolas*, at 4min12 – 4min22 (Mar. 9, 2021), https://www.bbc.co.uk/sounds/play/m000sz2k

## LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 26(c), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly to include "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Cappetta v. GC Servs. Ltd. P'ship*, 2008 WL 5377934, *7 (E.D. Va. 2008) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978)). The standard for "relevance" during discovery is substantially broader than the standard for admissibility at trial. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *Spendlove v. RapidCourt, LLC*, No. 3:18-CV-856, 2019 WL 7143664, at *5 (E.D. Va. Dec. 23, 2019) ("Relevancy is broadly construed to include any information if there is 'any possibility' it may be relevant to any claim or defense"); Wright & Miller, 8 Fed. Prac. & P. Civ. § 2011 (3d ed.) ("[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory").

Whether to issue a protective order and the scope of that protective order are committed to the trial court's discretion. *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992). It is an abuse of that discretion if the denial of discovery "cause[s] substantial prejudice." *Id.*

## ARGUMENT

Secrecy is the great exception, not the rule, and should occur only in the most extreme circumstances. "[P]ublic access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). "The common law presumes a right of the public to inspect and copy all

11

judicial records and documents." *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (internal quotation marks and citations omitted). The First Amendment also gives rise to a right of access to judicial records. *Id.* "Regardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" *Id.* (citation omitted). Whatever circumstances the Government will bring to the Court's attention *in camera*, one thing is clear, the Government's proposed protective order is so broad that it could allow Defendants to hide relevant information that does not implicate any compelling national security interests.

Plaintiffs—as they repeatedly told the Government—do not oppose a protective order limited to information concerning the nature, scope, duties, and title of Defendants' employment with the Government (or other individuals' employment with the Government). Plaintiffs oppose the Government's motion because it would exclude all information that *is in any way indirectly related to any individual's employment with the* United States Government. *See* Gov't Proposed Order, ECF No. 62-3. That is far broader than necessary. The proposed order is of such a vague scope that its limits are impossible to discern, thereby creating the likelihood that it would be misused to prejudice Plaintiffs' case by foreclosing legitimate discovery

The Government's Motion claims that the information it seeks to exclude has "at most minimal relevance" to this case, but the Government misunderstands what is relevant in this case. Gov't Mot. at 6. The Government does not contemplate the relevance of discovery about Ms. Sacoolas's phone, which bears on liability and the punitive damages[9] alleged in the Complaint, as

---

[9] Compl. Tenth & Eleventh Claims for Relief. *See* McGregor on Damages, 13-011 (21st. ed. 2020):

> As a result of the decision of the House of Lords in *Kuddus v Chief Constable of Leicestershire*, it can confidently be said that today exemplary awards are possible across the whole range of tort. Provided always that there is unacceptable behaviour

well as on the issue of spoliation, including an adverse inference regarding the missing phone data. The Government should not be permitted to restrict discovery on those issues through a vaguely worded, overbroad protective order, simply because the issues may "in any way" "indirectly" relate to someone's employment with the US Government. Relevance determinations are the province of the Court, which would, in the normal course, rule on motions *in limine* and objections at trial.

As justification for such an overbroad and unusual order, the Government adopts Defendants' view of the case, boldly stating that the only remaining disputed issues in this case are "e.g., vicarious liability, damages" and that these issues are "quite narrow," Gov't Mem. at 5, and claiming that "Ms. Sacoolas has conceded her liability for the collision." Gov't Mem. at 3. In taking this position, the Government appears to be acting more as a stalking horse for the Defendants than an independent agency trying to protect legitimate national interests. *See* Hrg. Tr. (Feb. 3, 2021), at 5:23-24 (Defendants' counsel stated that Ms. Sacoolas "has accepted responsibility for the accident, and there is no dispute on liability."). Contrary to the Government's brief, however, distraction while driving and phone use remain as disputed issues and Defendant Anne Sacoolas has only offered a qualified admission of liability, Answer ¶¶ 52, 62-63.

Ms. Sacoolas denies that she "failed to obey all roadway laws, failed to keep her vehicle under proper control, failed to pay full time and attention, failed to take due care to not collide with other vehicles, failed to operate her vehicle in a safe and prudent manner, and failed to report the accident or seek medical assistance for Harry." Compl. ¶ 52. Defendant Anne Sacoolas also

---

on the part of the defendant, behaviour that displays features which merit punishment by way of malice, fraud, cruelty, insolence and the like, . . . It is the features of the defendant's behaviour rather than the cause of action sued upon which determines whether exemplary damages are appropriate.

13

does not admit negligence for her failure "to call for an ambulance, despite having the means to do so, or otherwise come to Harry's aid." Compl. ¶¶ 62-63; Answer ¶¶ 62-63.

The circumstances of the collision, including Ms. Sacoolas's conduct just prior to and after the collision, are relevant to Plaintiffs' claims and Plaintiffs are entitled both to inquire into those circumstances in discovery and present those circumstances at trial. *Fairshter v. Am. Nat'l Red Cross*, 322 F. Supp. 2d 646, 653 (E.D. Va. 2004) ("[T]he Defendants' qualified admission of liability does not preclude the offer of some evidence of the facts surrounding the incident.") (holding that Defendants' admission of respondeat superior liability did not foreclose admission of evidence concerning the circumstances of the injury at issue). The Government should not be permitted to pave the way for Defendants to present the jury with "an unduly sanitized and incomplete version of the facts." *Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1994) (explaining that "[e]vidence is relevant if its exclusion would leave a chronological and conceptual void in the story.") (quoting *United States v. Vretta,* 790 F.2d 651, 655 (7th Cir. 1986)).

The Government's relevance analysis is also flawed because Defendant Jonathan Sacoolas denies liability. Answer ¶¶ 58-59, 88. Facts bearing on Plaintiffs' claim that he is vicariously liable are thus highly relevant. As the Court explained in denying Defendants' Motion to Dismiss Plaintiffs' counts against Jonathan Sacoolas, "It is quite plausible that Defendant Anne Sacoolas was driving her children home from dinner at RAF Croughton Air Force Base at the request or direction of Defendant Jonathan Sacoolas, and such a situation could be sufficient for a finding of vicarious liability under English law." Order at 3 (Mar. 5, 2021), ECF No. 27. The issue of vicarious liability is not "quite narrow," as the Government claims. It is central to the case against Jonathan Sacoolas.

The Government's conclusion that "the burden of such discovery would be disproportionate to the needs of this case," Gov't Mot. at 6, does not take into account the issues raised by Plaintiffs and the proper scope of relevance in this case. Its Rule 26 proportionality analysis undervalues the relevancy and significance of those issues. Even if Defendants and the Government disagree with the merits of Plaintiffs' claims, discovery "is not to be denied because it relates to a claim or defense that is being challenged as insufficient." *Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) (quoting Wright & Miller, Fed. Prac. & P. § 2008 (2d ed. 1994)).

## CONCLUSION

For all of these reasons, Plaintiffs respectfully request that the Court limit the protective order to matters directly related to Ms. Sacoolas's employment.

Dated: August 6, 2021

Respectfully submitted,

_____/s/_____
Jay Rohit Nanavati
**KOSTELANETZ & FINK LLP**
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
Telephone 202-875-8000
jnanavati@kflaw.com

Robert F. Muse (*pro hac vice*)
Daren H. Firestone (*pro hac vice*)
Ronald Kovner (*pro hac vice*)
Rachel Clattenburg (*pro hac vice*)
**LEVY FIRESTONE MUSE LLP**
1701 K St. NW
Washington, DC 20001
Telephone: (202) 845-3215
Facsimile: (202) 595-8253
rmuse@levyfirestone.com
dhf@levyfirestone.com
rk@levyfirestone.com

15

rmc@levyfirestone.com

*Attorneys for Plaintiffs*